MISSOURI, K. & T. RY. CO. OF TEXAS v. HEACKER. (No. 7170.)†

(Court of Civil Appeals of Texas. Dallas. June 6, 1914. Rehearing Denied June 27, 1914.)

EVIDENCE (§ 359*) — DEMONSTRATIVE EVIDENCE—PHOTOGRAPHS—ADMISSIBILITY.

Where photographic tracings showing the weakness of the pulse of the plaintiff in a personal injury action and microscopic photographs of his excretions indicating injuries to his kidneys were shown to have been taken with scientific accuracy, as well as tracings showing the impairment of his vision, such demonstrative evidence is properly received in evidence.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 1509–1512; Dec. Dig. § 359.*]

Appeal from District Court, Grayson County; W. J. Mathis, Judge.

Action by W. F. Heacker against the Missouri, Kansas & Texas Railway Company of Texas. From a judgment for plaintiff, defendant appeals. Affirmed.

C. C. Huff, of Dallas, and Head, Smith, Maxey & Head, of Sherman, for appellant. Randell & Randell, of Sherman, for appellee.

RASBURY, J. Appellee sued appellant, alleging that he was employed by appellant as a brakeman, and that while upon a coal car attached to a train of cars engaged in the discharge of his duties, and while the train was in motion and about to collide with another train, because of appellant's negligence, he leaped therefrom to avoid the greater hazard, and was seriously and permanently injured. Appellant by its answer conceded its negligence and appellee's injuries, but denied that they were as serious or of the extent alleged. There was a jury trial upon special issues, which resulted in a verdict for appellee for $7,000, followed by similar

judgment, from which this appeal is prosecuted.

A detailed statement of the facts proven on trial in support of the verdict of the jury is unnecessary, since the three assignments of error contained in appellant's brief relate solely to the admission in evidence of certain tracings and a microscopical photograph. In testifying to the physical condition of appellee and to the character, extent, and permanency of appellee's injuries, Dr. Acheson, witness for appellee, who had charge of him from the time of his injuries until the trial, said appellee was suffering mainly from injuries to his kidneys, due to his leap from the moving car. One of the symptoms, the witness said, was appellee's abnormal pulse or heart beats, which witness deposed at the time of his injuries was 103,000 pulsations per day, which was normal, but at the time of trial it had increased to 132,000 pulsations for the same period of time, which was abnormal; the pulse being weak and forceless—in fact, so weak it would hardly record a pulse wave. At this point witness produced, and counsel for appellee tendered in evidence, a photographic tracing of appellee's pulse, which, over appellant's objection, was admitted in evidence. This tracing is made by an instrument in use among medical men, which is placed upon the wrist of the patient. Attached to the instrument is a needle and slip of paper. As the instrument, which is a species of clockwork, moves the paper over the needle, the needle is elevated and lowered by the pulse beat, and the pulse wave is produced. The stronger the pulse the higher the waves in what would be a straight line across the paper but for the pulsation. The tracing was made in the usual scientific manner, and was correct. It was conceded by all physicians examined at trial on the subject that the instrument was accurate, and the tracings exhibited indicated a very weak heart.

The same witness produced, and the court admitted in evidence, over appellant's objection, a microscopical photograph of appellee's urine. The witness, in taking the photograph, secured a drop of appellee's urine, placed same upon a piece of glass covered the drop of urine with a microscope in order to magnify same, and finally placed the camera over the microscope, and secured the magnified photographic reproduction. The photograph was scientifically and correctly taken, and disclosed tube casts or crystals in the urine, indicating an inflamed and serious condition of the kidneys.

The same witness also produced, and the court admitted in evidence, a tracing prepared by the witness, showing how appellee's eyesight was affected by reason of the condition of the kidneys. The witness had testified that an examination of the right eye disclosed that only seven-thirteenths of the "field of vision" or the retina was available and only five-thirteenths of the left eye. The tracing offered in illustration or demonstration of the condition of the eyes was made by the perimeter, an instrument in general use by scientific men and correctly made, and is, in short, an irregular line traced over a circular piece of pasteboard representing the surface of the eye, showing that portion of the sight affected and that which is not.

It is urged, in effect, that the tracings and the photograph were inadmissible, because the same could not convey to the minds of laymen, the jury, any legitimate information with which to corroborate the claim of appellee's witness that appellee's kidneys were injured by the accident. For obvious reasons we shall not undertake a discussion of the general rules of evidence and an application thereto of the point at issue in the instant case, but shall content ourselves by a reference to cases involving facts, if not similar, at least quite analogous, to those in the instant case. In Monson v. State (Cr. App.) 63 S. W. 647, a photograph of the head of a deceased person showing the condition of the brain after the removal of the skull was held to be admissible, after the expert witness had testified that same correctly represented that which it purported to show. In Alberti v. New York, L. E. & W. R. Co., 118 N. Y. 77, 23 N. E. 35, 6 L. R. A. 765, a photograph showing the contracted condition of the injured person's limbs was held admissible and material after testimony of the attending physician to the effect that it correctly represented the actual condition of the limbs. An X-ray photograph delineating in the one case a disjointed wrist and in the other overlapping bones of the leg of living persons due to the result of accident and consequent injuries were held to be admissible, when shown to be correct and adequate by those having knowledge thereof. Bruce v. Beall, 99 Tenn. 303, 41 S. W. 444; Mauch v. City of Hartford, 112 Wis. 40, 87 N. W. 816. We think the rule as stated in Bruce v. Beall, supra, is the correct one, and is conclusive of the issues in the instant case. It is there said:

"New as this process is, experiments made by scientific men, as shown by this record, have demonstrated its power to reveal to the natural eye the entire structure of the human body, and that its various parts can be photographed as its exterior surface has been and now is. And no sound reason was assigned at the bar why a civil court should not avail itself of this invention, when it was apparent that it would serve to throw light on the matter in controversy. Maps and diagrams of the locus in quo drawn by hand are often used to aid a judge or a jury to an intelligent conception of the matters to be determined, and no one would think of questioning the competency of the testimony of a witness who stated that he knew the map or diagram to be entirely accurate, and who then used it to illustrate or make plain his statement. The pictorial representation of the condition of the broken leg of the plaintiff gave to the jury a much more intelligent idea of that particular injury than they would have obtained from any verbal description of it by a surgeon, even if he had used

for the purpose the simplest terms of his art. * * * It is not to be understood, however, that every photograph offered as taken by the cathode or X-ray process would be admissible. Its competency, to be first determined by the trial judge, depends upon the science, skill, experience, and intelligence of the party taking the picture and testifying with regard to it, and, lacking these important qualifications, it should not be admitted; and even then it is not conclusive upon the triers of fact, but is to be weighed like other competent evidence."

We are unable to add anything to the excerpt quoted, other than to say that in the instant case the preliminary proof of accuracy and knowledge on the part of the witness was shown in such manner as to bring both the photograph and the two tracings clearly within the rule stated.

Believing there was no error in the admission of the testimony complained of, it becomes our duty to affirm the case.