**LANCASTER et al. v. CARTER et al.***
(No. 2474.)

(Court of Civil Appeals of Texas. Texarkana. Jan. 23, 1922. Rehearing Denied Feb. 2, 1922.)

1. **Master and servant ⬦302(2)—Railroad's special officer held within scope of employment in shooting trespasser.**

In an action against a railroad for death of plaintiff's son, shot in railroad yards by special officer of the railroad, who was also a deputy sheriff, but who received compensation from the railroad only, and whose duties were to remove trespassers from trains and railroad property and to protect property, evidence that the shot was fired while deceased and his companion were pursued by the officer held to support a finding that in shooting he was acting within the scope of his employment.

2. **Death ⬦14(1) — Terms of statute cannot be extended.**

The terms of the statute specifying the cases in which an action may be brought for wrongful death cannot be extended to include cases omitted from its provisions.

3. **Death ⬦14(1)—Neglect or carelessness in statute includes wanton or "reckless" act.**

In an action against receivers of railroad for death of boy shot by railroad's special agent, a finding that the shooting was "wanton or reckless" held to bring the case within the statute authorizing an action for damages for death caused by the "neglect or carelessness" of the receivers or other persons in control of railroad or their servants or agents, as the word "reckless," among other things, means "careless," "heedless," "negligent."

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Reckless—Recklessly—Recklessness.]

4. **Death ⬦75—Shooting of boy in railroad yard by officer held carelessness.**

In an action under the statute for death of plaintiff's son, shot in defendant's railroad yard by a special agent, evidence held to sustain finding that the shooting was carelessness.

5. **Appeal and error ⬦1170(6) — Improper argument not ground for reversal, where not calculated to cause rendition of improper judgment.**

Improper argument of counsel in closing address to jury held not ground for reversal, where not reasonably calculated to rendition of an improper judgment within the rules of Courts of Civil Appeals, No. 62a (149 S. W. x).

6. **Death ⬦99(3)—$4,000 for minor's death held not excessive.**

Verdict of $4,000 to parent for death of 16 year old boy, who had been employed as a section hand, held not excessive.

Appeal from District Court, Gregg County; Chas. L. Brachfield, Judge.

Action by Mrs. H. H. Carter and husband against J. L. Lancaster and another, receivers. Judgment for plaintiffs, and defendants appeal. Affirmed.

It appears from testimony in the record that Haden Cabbiness, 16 years old, son of appellee Mrs. H. H. Carter, was shot in the back and killed by Joe Phillips, on the night of August 29, 1920, in the yards of the railway companies in Mineola. Phillips was a "special officer" for the Missouri, Kansas & Texas Railway Company, the International & Great Northern Railway Company and appellants, then in charge of the Texas & Pacific Railway Company's line of railway as receivers. His duties were, he testified:

"To look after trespassers on the trains and property of the receivers at Mineola; to remove trespassers from said trains and property, and to protect the same from injury and damage, to see that nothing was stolen or robbed."

Phillips was also a duly qualified deputy sheriff of Wood county. He was appointed such deputy by Sheriff Apel at the instance of one of the railway companies mentioned. Apel testified that he understood when he appointed him that Phillips "was working for the three railroad companies," and was to continue to work for them in their yards. Phillips, Apel testified he understood, "gave all of his time to the railroad companies at Mineola. He was always on the yard or at the depot." Phillips was paid for service he rendered as "special officer" by the railway companies. He received no compensation for service as deputy sheriff, if he rendered any, except, he testified, he received his costs in cases in which he "had filed complaints."

On the theory that Phillips was acting within the scope of his employment by appellants as a "special officer" when he shot the boy, and that appellants were therefore liable to her for the damage she suffered by his death, appellee, joined by her husband, the other appellee, commenced and prosecuted this suit against appellants.

It appeared from the testimony that the deceased and Marcellus Hirth, 19 years old, lived in Longview, but until a few days before Haden was killed had worked as section hands at or near Wills Point. Late in the afternoon of the day mentioned the boys got,

aboard a freight train at Longview, intending to ride thereon to Wills Point, where they expected to go to work. They had no right to ride on the train, and were on it without the knowledge or consent of the conductor in charge of it, but with the knowledge of a brakeman thereon. Before the train reached Mineola the boys determined to stop there for the night instead of going on to Wills Point. They alighted from the train as it moved slowly through the yards at Mineola, and as they walked by the side of it they saw two men (Phillips and one Browning), when Haden said to Marcellus: "See those two men. We better go back." Turning about, they walked in the opposite direction. The men came on toward them, and they began "trotting," when Haden, looking back, exclaimed "Yonder they come," and they "hurried on," Marcellus testified. They had gone only a short distance when one of the men (Phillips), running after them, fired the shot that killed Haden. Marcellus testified he and Haden did not want any one to see them, and an inference from his testimony is that they were afraid they might be arrested for being on the train unlawfully. He testified that neither he nor Haden was armed. He further testified that neither of the two men said anything to them before the shot was fired. When the man (Phillips) who fired the shot reached the place where Haden fell he exclaimed, Marcellus testified, "My God, have I shot a white boy?" and then said he had a telegram to "catch a negro." The statement about a negro was explained by testimony given by Phillips and other witnesses. Just before the train reached Mineola Phillips had received a message from appellant's division superintendent at Marshall as follows:

"Arrange to meet X-509 west at East Switch, Mineola, and take negro off of train who has pistol."

When he received the message Phillips requested Louis Browning, city marshal at Mineola, Henry Williams, Browning's deputy, and Kay Puckett, a car inspector, to go with him and assist "in catching the negro." Puckett, when requested to go, asked Phillips "on what authority they were going down there," and Phillips showed him the message from the superintendent. Puckett and Williams went to the south side of the train, and Phillips and Browning to the north side thereof, as it moved into Mineola. Just before Phillips and Puckett saw Haden some one (the negro the message referred to, presumably) on a refrigerator car in the train, the testimony indicated, fired a shot, whereupon Browning (he testified) remarked to Phillips, "He is coming into town shooting." Phillips, Browning testified, said:

"Stop, and tore out to running down the track, I behind him about 10 feet. He shot and stopped, and I came up to where he was.

I stepped out to one side so I could see, and I saw a man in a stooping position. I told Phillips, 'That fellow is not hurt, and he is fixing to shoot it out with us,' and Phillips said not to shoot, that maybe he would give up. The train went on past the cattle guard, and we went to where the boy was. Mr. Phillips threw his flashlight on him and said, 'My God, Louis, this is a white man.'"

Phillips testified that when the shot was fired he remarked to Browning, "He is coming into town shooting, and to be careful and not get killed." He further testified:

"Just after this shot was fired some one jumped off of the train and began running back toward the train, east, and I, knowing the shot had been fired, and did not know but what he had killed one of the boys (Puckett and Williams) on the other side of the train, immediately took after him, calling on him to halt. I ran after him 80 steps. After running him 80 steps he had gained on me, and he had crossed the cattle guard by the side of train, while the train was still running. I then fired my pistol, thinking I might frighten him, and he would stop and give up. * * * I saw a man jump off of this train and run, but I didn't know it to be Haden Cabbiness. I saw a man, but I knew not whether he was white or black or who it was. He was 30 steps from me when he got off. I ran after him and commanded him to halt for the reason that I did not know but what he had killed one of the boys on the other side. He was running in the shadow of the train, and that was the reason I could not tell whether he was white or black. I ran after him. I was acting as deputy sheriff because I had reason to believe the law was being violated. I fired the pistol after him with the intention of frightening him, thinking he would stop; but I fired the pistol as deputy sheriff as above stated. * * * I did not know at whom I was shooting when I fired, but thought I was shooting at the negro."

On special issues submitted to them the jury found as follows: (1) That on August 29, 1920, and at the time he killed the deceased, Phillips was acting as appellants' agent. (2) That at the time he shot the deceased Phillips "was acting within the real or apparent scope of his authority as such agent." (3) That the act of Phillips in shooting the deceased "was wanton or reckless on his part." (4) That $2,028.24 "paid now" would compensate the deceased's mother for his earnings "from the date of his death to the time he would have been 21 years of age," after "deducting" such amount as she would have expended in his support and maintenance. (5) That $2,000 "paid now" would compensate her for "the contribution she would probably have received" from the deceased after he became 21 years old and during her lifetime. The trial court thereupon rendered judgment in favor of appellee Mrs. H. H. Carter against appellants for $4,028.24, and in favor of appellants against the other appellee for costs they incurred on his account.

Young & Stinchcomb, of Longview, for appellants.

Lacy & Bramlette, of Longview, for appellees.

WILLSON, C. J. (after stating the facts as above). [1] We think the testimony in the record, material parts of which are set out in the statement above, was sufficient to support the finding of the jury that Phillips was acting within the scope of his employment by appellants as "special officer" when he fired the shot that killed Haden Cabbiness. The rules applicable in determining a question of that kind are so well defined in cases cited below they need not be restated here. See Railway Co. v. Currie, 100 Tex. 136, 96 S. W. 1073; Railway Co. v. Lipscomb, 95 Tex. 5; Railway Co. v. Parsons, 102 Tex. 157, 113 S. W. 914; Grubb v. Railway Co., 153 S. W. 694; Express Co. v. Mackley (Ark.) 230 S. W. 598. We are also of the opinion that none of the assignments presenting questions as to the action of the trial court in admitting and excluding testimony offered furnish a sufficient reason for reversing the judgment.

The debatable questions made by the assignments are these, we think: (1) Were appellants as receivers of a railway company liable in damages if the act of Phillips as their agent in shooting the boy was "wanton or reckless," as the jury found it was? (2) Should the judgment be reversed because of the error of the trial court in permitting the improper argument indulged in by counsel for appellees in his closing address to the jury?

The applicable part of the statute referred to is as follows:

"An action for actual damages on account of injuries causing the death of any person may be brought in the following cases: 1. * * * When the death of any person is caused by the neglect or carelessness of the receiver or receivers, or other person or persons in charge or control of any railroad, or their servants or agents."

[2-4] As the terms of the statute "cannot be extended to include cases omitted from its provisions" (Railway Co. v. Lipscomb, 95 Tex. 5, 64 S. W. 923, 55 L. R. A. 869, 93 Am. St. Rep. 804; Turner v. Cross, 83 Tex. 228, 18 S. W. 578, 15 L. R. A. 262, the first question must be answered in the negative, unless it can be said that the finding of the jury that the act of Phillips in shooting the boy was "wanton" or "reckless" was a finding that the act was "negligent" or "careless" within the meaning of those words in the statute. We think that was the legal effect of the finding, and therefore that the first of the two questions should not be so answered, but should be answered in the affirmative; for the word "reckless" means, among other things, "careless," "heedless," "negligent," according to the dictionaries. See Webster's Dictionary and the Century Dictionary. Therefore it is not giving a wrong or strained effect to the finding of the jury to say it determined that the act of Phillips in shooting the boy was "wanton" or "careless." If it was "careless" it was within the terms of the statute, and the judgment is not erroneous on the ground that it was not, if the finding was supported by testimony—and we think it was. Part of Phillips' duty as special officer was, he testified, "to look after trespassers on the trains," and "to remove trespassers from trains." He was performing that duty when, in obedience to the direction in the telegram he received from appellant's division superintendent, he met the train to take a negro with a pistol off of it. The jury had a right to conclude from his own testimony that the death of the boy was due to the negligent and careless manner in which he undertook to perform that duty; for Phillips testified:

"I fired my pistol for the purpose of frightening the man running from me to see if he wouldn't stop. I did not try to hit him."

If he didn't try to hit "the man," then his hitting the boy was due to negligence and carelessness on his part in shooting toward him as he did.

[5, 6] We are not entirely satisfied that the second of the two questions should not be answered in the affirmative, but conclude the doubt could be resolved in favor of the judgment, because we do not think the improper argument of appellees' counsel "was reasonably calculated to cause, and probably did cause, the rendition of an improper judgment in the case," within the meaning of rule 62a (149 S. W. x) for the government of Courts of Civil Appeals. The amount of damages found by the jury does not appear to be excessive when considered with reference to the testimony, and the findings in themselves indicate that the jury was not influenced by the improper argument, but were careful in their computations. Railway Co. v. Smith, 153 S. W. 391; Railway Co. v. Green, 196 S. W. 555.

Assignments not disposed of by what has been said are also overruled.

The judgment is affirmed.

LEVY, J. I do not think that the words "neglect" or "carelessness" as used in the statute are intended to extend to a "wanton" or "reckless" act. A merely "careless" or "negligent" act is not ordinarily characterized as a "wanton" or "reckless" act, and the distinction is important in construing the terms of the statute.