## TEXAS EMPLOYERS INS. ASS'N v. CROW.

### No. 2709.

Court of Civil Appeals of Texas. Eastland.

Feb. 4, 1949.

Rehearing Denied March 4, 1949.

McMahon, Springer & Smart, of Abilene, for appellant.

Letcher D. King, of Abilene, and Alfred M. Scott, of Austin, for appellee.

GRISSOM, Chief Justice.

This is a workman's compensation case. Trial resulted in a judgment for the employee against his employer's insurance carrier for 45 weeks' accrued compensation at the rate of $20 per week and 107 weeks' compensation to accrue at the rate of $20 per week. The insurance carrier has appealed.

Appellant's point one is that the court erred in permitting the X-ray pictures introduced in evidence to be taken into the jury room during its deliberation. The X-ray pictures, taken by both appellant's doctor witnesses and appellee's doctor witness, were introduced in evidence, placed in the view box, and interpreted by said doctors in the presence of the jury. After the jury retired to consider its verdict, at its request and on appellee's motion, these X-ray photographs were sent to the jury room. Appellant's objection was stated as follows:

"* * * that said pictures are technical and susceptible of only technical interpretation and explanation; that permitting the jury to have the use thereof for their deliberation is inflammatory and prejudicial, and permits the jury to consider matters reflected therefrom which are not the subject of any testimony introduced in the trial of the cause; further, because the jury does not have in its deliberation, in connection with said pictures, the benefit of expert advice or service but are able to form their own conclusions therefrom, said pictures being a matter of technical interpretation and probably will lead to erroneous and improper conclusions by the jury."

Texas Rules of Civil Procedure, rule 281, provides that the jury may take with it in its retirement "any written evidence" except depositions. Appellant admits that ordinary photographs fall within the category of "written evidence" as used in R.C.P. 281, and that they may be taken into the jury room and considered by the jury in its deliberation. Many cases have so held. See Dallas Ry. & Terminal Co. v. Orr, Tex.Sup., 215 S.W.2d 862, 866; 41 Tex.Jur. 856; Younnger Bros. v. Ross, Tex.Civ.App., 151 S.W.2d 621, 626; Dallas Ry. & Terminal Co. v. Durkee, Tex.Civ. App., 193 S.W.2d 222, 227; United Employers Casualty Co. v. Smith, Tex.Civ.App., 145 S.W.2d 249, 250. Appellant argues that X-ray photographs are not written evidence, within the meaning of said rule, because they do not tell a story to the layman, but only to the expert; that erroneous conclusions would be drawn therefrom by a layman and he would be horrified by the gruesome spectacle revealed by X-ray pictures. It has been held that the gruesomeness of a photograph does not render it inadmissible. Breeding's Dania Drug Co. v. Runyon, 147 Fla. 123, 2 So.2d 376. See 32 C.J.S., Evidence, § 712, p. 615, note.

X-ray photographs, identified and shown to have been properly taken and developed, are admissible in evidence. Federal Underwriters Exchange v. Cost, 132 Tex. 299, 307, 123 S.W.2d 332; Texas Employers' Ins. Ass'n v. Cheek, Tex.Civ.App., 63 S.W.2d 1103, 1105; 17 Tex.Jur. 736. In this respect they stand upon the same basis as other photographs. McMillian v. State, 92 Tex.Cr.R. 474, 244 S.W. 512; Pecos & N. T. Ry. Co. v. Winkler, Tex.Civ. App., 179 S.W. 691, 697; Clark v. Reising, 341 Mo. 282, 107 S.W.2d 33, 35; Southern Underwriters v. Waddell, Tex.Civ.App., 144 S.W.2d 637, 640; Houston & T. C. R. Co. v. Shapard, 54 Tex.Civ.App. 596, 118 S. W. 596, 601, writ ref.; Missouri, K. & T. Ry. Co. of Texas v. Heacker, Tex.Civ.App., 168 S.W. 26, 27, writ dis.; International Brotherhood of Boilermakers, Iron Shipbuilders & Helpers of America, v. Huval, Tex.Civ.App., 154 S.W.2d 233, 235, reversed on other grounds, 140 Tex. 21, 166 S.W.2d 107; Traders & General Ins. Co. v. Wright, Tex.Civ.App., 95 S.W.2d 753, 758, affirmed 132 Tex. 172, 123 S.W.2d 314; Texas Indemnity Ins. Co. v. Phillips, Tex. Civ.App., 153 S.W.2d 503, 505; 32 C.J.S., Evidence, §§ 711, 712, pages 614, 616.

"While a picture produced by an X-ray cannot be verified as a true representation

of the subject in the same way that a picture made by a camera can be, the rule in regard to the use of ordinary photographs on the trial of a cause applies to photographs of the internal structure and conditions of the human body taken by the aid of X-rays, and such a photograph, when verified by proof that it is a true representation, is admissible in evidence." 22 C.J. 916.

It has been held that under R.C.P. 281 the jury may take with it in its retirement a note introduced in evidence, notwithstanding the genuineness of the signature thereto was denied and that by so doing, the jurors were permitted to make a comparison of the signature on the note with the admitted signatures of appellant and to thereby become witnesses, in the nature of experts, by comparing the signatures. Joffre v. Mynatt, Tex.Civ.App., 240 S.W. 319, 324.

It has likewise been held proper, under R. C. P. 281, for the jury to take with it in its retirement an abstract of title introduced in evidence in a suit in trespass to try title. Frugia v. Trueheart, 48 Tex.Civ. App. 513, 106 S.W. 736, 740, writ ref. Also, contracts and receipts, insurance policies, deeds and surveyor's reports and maps. See 41 Tex.Jur. 856; San Antonio & A. P. Ry. Co. v. Barnett, 12 Tex.Civ.App. 321, 34 S.W. 139; Kuntz v. Spence, Tex.Civ. App., 48 S.W.2d 413, 419, reversed on other grounds, Tex.Com.App., 67 S.W.2d 254; West v. Houston Oil Co. of Texas, 56 Tex. Civ.App. 341, 120 S.W. 228, writ ref.; Kennedy v. Upshaw, 64 Tex. 411; Bankers Life Co. of Des Moines, Iowa v. Butler, Tex.Civ.App., 122 S.W.2d 1077.

It has been held that the jury may take with it in its retirement instruments introduced in evidence where the genuineness of the handwriting is in question, and that the jurors may then examine same with a microscope for the purpose of passing upon the genuineness of the signature thereto. In re Thomas' Estate, 155 Cal. 488, 101 P. 798, 802; 53 Am.Jur. 663; 64 C.J. 1033. See also United Employers Casualty Co. v. Smith, Tex.Civ.App., 145 S.W.2d 249, 250, writ ref.; Smith v. Young, Tex.Civ.App., 147 S.W.2d 859, 861; Texas Employers Ins. Ass'n v. Applegate, Tex.Civ.App., 205 S.W.

2d 412, 414; Higgins v. Los Angeles Gas & Electric Co., 159 Cal. 651, 115 P. 313, 34 L.R.A.,N.S., 718.

Appellant's contention finds some support in Maryland Casualty Co. v. Dicken, Tex.Civ.App., 80 S.W.2d 800, 804. However, the general rule appears to be that an X-ray photograph is the best evidence of what is shown thereby, as in the case of an ordinary photograph. 32 C.J.S., Evidence, § 792, page 722. It has been held that the opinion of experts as to what an X-ray picture shows is the best evidence thereof. Maryland Casualty Co. v. Dicken, supra. However, the majority of the decisions and, in our opinion, the better reasoning are to the contrary. See 32 C.J. S., Evidence, § 792, page 723; 22 C.J. 916; American National Ins. Co. v. Points, Tex. Civ.App., 81 S.W.2d 762, 766, writ dis. See also Utilities Indemnity Exchange v. Burks, Tex.Civ.App., 7 S.W.2d 1112, 1114; Texas Employers Ins. Ass'n v. Reid, Tex. Civ.App., 209 S.W.2d 1016, 1022; Traders & General Ins. Co. v. Collins, Tex.Civ. App., 179 S.W.2d 525, 528. If X-ray photographs are the best evidence of what they show, appellant's objection that they are only susceptible of expert interpretation, which we consider is, in effect, an objection that an expert's interpretation is the best evidence of what the photographs reveal, is not well taken.

We hold that the X-ray pictures constitute "written evidence," within the meaning of R.C.P. 281, and the court, therefore, did not err in permitting them to be taken to the jury room during the jury's deliberation. Point one is overruled.

Appellant's second point is to the effect that the court erred in not sustaining appellant's objection to the argument of appellee's counsel and in failing to instruct the jury that there was no evidence in the record that appellee quit his job because he was afraid he was going to get fired. The point arose in this manner: appellee did so testify, but appellant's objection thereto was sustained. Appellee's counsel was arguing to the jury, in substance, that appellee had testified that after the injury to his arm, when he went back to his old job of operating a road scraper, he did not use his left

arm, which had been broken, while he was doing that kind of work; that he went back to work for his old employer on the 10th day of September and continued to work for him until January 22nd when he quit "because he was afraid he was going to get fired."

■ Appellee contends that such argument was not erroneous because the trial court erred in sustaining the objection to appellee's testimony that he quit because he was afraid he would be fired. It was error to argue to the jury any evidence stricken by the trial court, regardless of whether the court was correct in striking it. Appellee has cross-assigned error to the action of the court in sustaining the objection to such testimony. However, we have concluded, regardless of whether or not the court was correct in sustaining the objection to appellee's testimony that he quit work because he was afraid he was going to get fired, that appellant could not have been injured by such argument. It was undisputed that on July 10, 1947, appellee broke his left arm between the wrist and elbow; that he returned to work on the same job for the same employer on September 10, 1947. He testified, without objection, as to his condition then: "Well, all I did, I had to do with one arm. I could not use * * * my left arm to do any good; so much pain, I couldn't use it." He testified that he complained to the foreman of the construction company for which he worked " * * * about my arm all along. I know that anybody around could see it, that I favored it. I had to favor it, it was so sore I just couldn't do nothing with it."

Appellee was asked by his counsel whether he quit work on January 27th to which he answered: "Yes, sir. I quit. My arm was bothering me." Objection was sustained to such answer and appellee was then asked:

"Q. Well, did they fire you? A. No. They didn't fire me.

"Q. Why did you quit? A. My arm was bothering me so I was afraid I would get fired, if I didn't quit."

Appellant's Counsel: "We object to that; to what he was afraid of and ask the Court to instruct the jury not to consider it."

The Court: "Gentlemen, don't consider the part that he was afraid he would get fired, but the part, where he said his arm was bothering him, you can consider that."

Appellant then testified that he quit work for three months; that appellant's doctor recommended an operation. Appellee then testified:

"Q. Now, was your arm paining you— when you said you quit Harry Campbell on January the twenty-second, 1948 and then you stayed off for three months, is that right? A. Yes, sir.

"Q. Then what did you do? A. Went to work for Hugh McMillan."

Appellee testified that he started operating a scraper for Mr. McMillan three months after he quit working for Mr. Campbell on January 22, 1948. Relative to his condition then he testified:

"Q. At that time were you able to use your left arm? A. No, sir. I told him I didn't have but one arm to work with."

Objection was sustained to the answer, evidently because it was not responsive to the question. He then testified that he worked for Mr. McMillan for ten days.

"Q. Did you quit or were you fired? A. No. I got through."

He then testified that he laid off for three weeks, then returned to work for Mr. McMillan operating a scraper; that he did this work at Marfa for twelve days. He testified:

"Q. Did you quit or were you fired? A. I quit.

"Q. Why did you quit? A. On account of my arm."

Appellee testified that he had not worked since that time.

He later testified that after he quit work for Mr. McMillan he worked a day and a half for Mr. McGowan. Relative thereto, he testified without objection:

"Q. Did you start to work and work until the job was over out there? A. No, sir.

"Q. Why did you quit if you did quit? A. Well, I just couldn't make it.

"Q. What do you mean by "you couldn't make it"? A. I couldn't do the work. I

just told him he had better bring me to town and get somebody else to take my place.

"Q. Why couldn't you do it; didn't you know how, or what was the matter? A. I knew how but I was not able to do the work. I could not do it with one hand.

"Q. That's the last time that you tried to do any work? A. Yes, sir.

"Q. Does your arm hurt you at this time? A. Yes, sir.

"Q. Whereabouts does it hurt you? A. Well, it hurts, them two fingers there are numb (indicating), and it comes on up my arm; right in there (indicating) there is a lot of pain; and it comes on up to my elbow; from my elbow up to my shoulder.

"Q. It pains you, the way I understand it, from your hand on up to your elbow and from your elbow to your shoulder? A. That's right."

Appellee further testified:

" * * * I will ask you whether or not that you could do this work and did do the work, if your arm gave you any pain while you were doing that work? A. Yes, sir. I could do it but I had to do it with one hand and I had to do it kind of on the sly. I imagine I just barely made it but I did work with one hand."

There is other testimony in the record of the same import. We think it is evident that with the foregoing testimony before it the jury acquired no additional information and could not have been influenced by argument that appellee quit work because he was afraid he would be fired. Appellee had told the jury that he could not use his left arm in operating the heavy machinery; that he had to do his work with one hand; that he did it on the sly. It added nothing to appellee's case to argue that he quit because he was afraid he would get fired.

In Texas Employers' Ins. Ass'n v. Brock, Tex.Com.App., 36 S.W.2d 704, 706, the employee was improperly permitted to testify that in his opinion he would not be able to do physical labor in the future. The court held the testimony was inadmissible. It said:

"However, we are of the opinion that the admission of this evidence was not of the nature and character, when all of the other testimony in the case was considered, as was likely to have had any harmful effect upon the rights of the plaintiff in error, and, such being our conclusion, while we think there was error in admitting the testimony, such error is not a reversible one. Rules of the Supreme Court 62a."

In Texas Employers Ins. Ass'n v. Hale, Tex.Civ.App., 188 S.W.2d 899, 904, the trial court improperly sustained an objection to argument. In passing on a point of error based thereon, the court said:

"However, the ruling bore only remotely upon the jury issues and is not viewed as 'such a denial of the rights of the appellant as was reasonably calculated to cause and probably did cause the rendition of an improper judgment' ".

See also Texas Motor Coaches v. McKinney, Tex.Civ.App., 186 S.W.2d 714, 719, and Fauth v. First National Bank of Granbury, Tex.Civ.App., 214 S.W.2d 168, 172. Texas Rules of Civil Procedure, rule 434 provides that no judgment shall be reversed on the ground that the court committed an error in the course of the trial, unless the appellate court shall be of the opinion that the error complained of amounted to such a denial of the rights of the appellant as was reasonably calculated to cause and probably did cause rendition of an improper judgment. We think it is evident the argument complained of was not reasonably calculated to cause and did not probably cause rendition of an improper judgment. Our Supreme Court has impliedly held that said provision of R.C.P. 434 is applicable to improper argument. Airline Motor Coaches v. Bennett, 144 Tex. 36, 40, 187 S.W.2d 982, 984; Denbow v. Standard Accident Ins. Co., 143 Tex. 455, 457, 462, 186 S.W.2d 236. See also Southwestern Telegraph and Telephone Co. v. Coffey, Tex.Civ.App., 163 S.W. 112, writ ref.; Lancaster v. Carter, Tex.Civ.App., 237 S.W. 634; Rhodes v. Panhandle & S. F. Ry. Co., Tex.Civ.App., 243 S.W. 516, writ dis.

Upon an objection being made that an argument is not supported by the record, it is the duty of the trial court to pass upon the question of whether or not

the evidence referred to in the argument was admitted, and it is error for the court to leave it to the jury to determine whether there is such testimony in the record. Appellant did not waive his right to have the court, rather than the jury, pass upon this question. While the failure of the court to instruct the jury as requested by appellant was error, such action was not reasonably calculated to cause rendition of an improper judgment. We hold that the error of the court in failing to instruct the jury that there was no evidence in the record that appellee quit to keep from getting fired does not constitute reversible error.

The judgment is affirmed.