The Chicago and Joliet Electric Railway Company

*v.*

Samuel Spence.

*Opinion filed December 22, 1904.*

1. Evidence—*proper inquiry as to earning capacity of plaintiff.* In allowing damages for the impairment, by the injury, of plaintiff's ability to work, the proper inquiry is the comparative capacity of plaintiff to earn money at time of and after he received the injury.

2. Same—*when evidence of prior earning capacity is incompetent.* Proof of the large salary received by the plaintiff ten years before the injury, when he was younger and more capable and was in a different employment, and of his salary in a later employment dependent upon too many collateral circumstances to show his earning capacity at the time of the injury, is incompetent.

3. Same—*X-ray photographs are admissible after proper preliminary proof.* An X-ray photograph or skiograph made by an expert, who testifies that he was regularly engaged in the business of taking such photographs for physicians and that he took the negative and developed the photograph in question and that it was an accurate and correct representation, is admissible in evidence.

4. Trial—*jury may take photographs given in evidence to the jury room.* Photographs or skiographs given in evidence may be taken by the jury to the jury room upon their retirement to consider of their verdict.

Appeal from the Appellate Court for the Second District;—heard in that court on appeal from the Circuit Court of Will county; the Hon. R. W. Hilscher, Judge, presiding.

E. Meers, for appellant.

Eddy, Haley & Wetten, and J. L. O'Donnell, for appellee.

Mr. Justice Boggs delivered the opinion of the court:

An electric car propelled by the appellant railway company, on which the appellee was riding as a passenger, collided with another of appellant's cars and appellee was

injured thereby. He instituted an action on the case in the circuit court of Will county, and on a hearing before the court and a jury was awarded judgment in the sum of $14,000. This judgment has been affirmed by the Appellate Court for the Second District, and the record is before us on the further appeal of the company.

The collision occurred on the 28th day of March, 1902. The appellee at that time was in the employ of the Inter-Ocean Construction Company as a time-keeper and inspector of poles for electric wires, at a salary of $125 per month. It was insisted before the jury that because of the injury received during the collision of the cars the appellee had become permanently disabled to labor or engage in the active pursuits of life. Damages were sought for such alleged loss of capacity to earn money in the future. As being proper for the consideration of the jury in arriving at a conclusion as to the pecuniary loss which would be inflicted on appellee by reason of his injuries and disabilities, the appellee was permitted to prove, without objection, that at the time of the collision he was employed as time-keeper and inspector for the construction company and was receiving wages at the rate of $125 per month; that he had been so engaged since January, 1902,—about three months before he was injured; that for the period of six months immediately preceding he was in the employ of the Sanitary District of Chicago at the controlling works at Lockport, at a salary of $150 per month; that immediately prior thereto he was engaged, for about one month, in putting in abutments for the Joliet Bridge Company, at a salary of $125 per month, and that during the period of three months immediately preceding said last employment he was engaged in putting in concrete work for water wheels of an electric light company, at $125 per month and board, and that for the preceding term of two years he had worked for the sanitary district, inspecting bridges and building abutments and piers, at $100 per month, and that for some five or six months still prior thereto

he was superintendent of a quarry in Tennessee, at a salary of $100 per month.  Over the objection of the appellant company the appellee was allowed to prove that he was superintendent of the Western Stone Company from 1892 and 1893, at an annual salary of $2500, and that he remained in that position until 1897, at a salary of $2100 or $2250 per annum.  Appellee was injured in 1902.  His employment as superintendent of the Western Stone Company at $2500, in 1892, was ten years before he was injured, and the salary of $2250 received by him as such superintendent, when his employment in that position terminated, was for services rendered in 1897,—five years before he was injured.

The proper inquiry was the comparative capacity of the appellee to earn money at the time of and after he had received the injury.  He was at the time of the collision of the age of fifty-three years.  The salary that he had enjoyed when superintendent of the stone company, beginning ten years before and ending more than five years before the date of the injury, ought not, we think, have been allowed to be proven.  It was remote in point of time, and the employment was different in its nature from that in which he was engaged when injured or had been engaged in for some five years before.  He was a younger man and more capable then, and had either abandoned the position of superintendent or had been supplanted by another.  The salary he received from the stone company as superintendent from 1892 to 1897 was dependent on too many independent and collateral circumstances to give the jury any correct information as to the value of his earning power or capacity at the time he received the injuries which, as he claimed, deprived him of the capacity to work or earn money.  (*West Chicago Street Railroad Co.* v. *Maday,* 188 Ill. 308.)  As such superintendent he received very much larger compensation per annum than when he was injured, or at any time during the period of time immediately prior thereto, while the circumstances were such as to indicate with reasonable certainty the

extent of his ability to command wages and to earn money. The purpose of making known to the jury what salary he had received from the stone company in years past was to enhance the damages to be awarded him for the loss or diminution of his earning capacity for the future. It no doubt had that effect, and contributed to the conclusion reached by the jury that the appellee was entitled to receive the large amount specified in the verdict. The evidence was incompetent and prejudicial.

In *West Chicago Street Railroad Co.* v. *Maday, supra,* we held that the appellee, who was keeping a coffee and tea store when injured and had been so engaged for five years, could not properly prove the amount of wages he had received when engaged as a worker in wood prior to the time when he engaged in selling coffees and teas, for the reason that he had abandoned the business of working in wood five years before he was injured, and for the further reason that the testimony was too remote and involved consideration of too many independent and collateral circumstances to give the jury any correct information as to his earning power at the time of the injury. We declined, however, to reverse that case, although the evidence was incompetent, for the reason the amount shown to have been earned by appellee as a wood worker was only daily wages of $2 or $2.25 per day, and that it was plain, from the competent facts proven in the case bearing on his capacity to earn money at the time that he received the injury, that the incompetent evidence had not enhanced the award of damages. In the case at bar the evidence was incompetent, and it is manifest that the damages were enhanced thereby, to what extent we cannot determine.

As the case may be again heard it is necessary we should consider the insistence that the court erred in permitting the introduction in evidence of a skiograph, or X-ray photograph, of a portion of the chest and body of the appellee. The skiograph was made by an expert, who testified he was

an X-ray expert and was regularly engaged in taking such photographs for physicians; that he took the negative from which the photograph was developed and that he developed the photograph, and that it was an accurate and correct representation, etc. It was intended to show by the skiograph that appellee's heart had been displaced; that the walls of that organ had become thick and that an abnormally heavy tissue had formed on the walls of his heart. The testimony of the X-ray expert who had taken the skiograph tended to show the picture correctly represented the condition of the heart of the appellee. Photographs taken by the X-ray process are admissible in evidence after proper preliminary proof of their correctness and accuracy has been produced. (22 Am. & Eng. Ency. of Law,—2d ed.—755.) We think the testimony of the X-ray expert who made the skiograph was sufficient to justify the court in ruling that the picture should be admitted in proof. Subsequently, when the appellant was introducing testimony in chief, another X-ray expert was produced in its behalf. This witness gave testimony tending to show that the skiograph had not been properly taken, and expressed the opinion that the picture was of little or no value as a representation of the heart and other portions of the body of the appellee. But the court was not asked to exclude the picture because of this adverse criticism, nor do we think the motion to exclude should have been granted had it been interposed.

It was not error to allow the jury to take the skiograph with them when they retired to consider of their verdict. Paragraph 56 of the Practice act (3 Starr & Cur. Stat. 1896, chap. 110, p. 3054,) authorizes "papers read in evidence, other than depositions, may be carried from the bar by the jury." "Papers in evidence" clearly embrace photographs or skiographs offered and received in evidence. One of the definitions of the word "read" given by Mr. Webster is, "to discover or understand by characters, marks, features, etc.; to gather the meaning of by inspection; to learn by

observation." Photographs or skiographs produced in evidence on a trial before a jury are, within this definition, "read" in evidence, and may be taken by the jury on their retirement to consider and determine the cause.    12 Ency. of Pl. & Pr. 591, 592; *Barker* v. *Perry,* 67 Iowa, 146.

For the reason stated the judgment must be and is reversed, and the cause will be remanded to the circuit court for such other and further proceedings as to law and justice shall appertain.                                            *Reversed and remanded.*