## John Bell v. The State.

### No. 7886. Decided December 19, 1923.

1.—Murder—Evidence—Dying Declaration—Rebuttal.

Where, upon trial of murder, the State had been permitted to prove as a part of the dying declaration of deceased that the appellant had waylaid the deceased, the court should have permitted the appellant to testify on his own behalf that he had not waylaid the deceased, and refusal to permit him to do so is reversible error.

2.—Same—Misconduct of Jury.

Where, upon trial of murder, a map or diagram of the scene of the killing was introduced in evidence, as was also the pistol used by the deceased, both of which had been left in the courtroom when the jury retired, and these articles were delivered to the jury by the officer in their retirement, there is no reversible error.

3.—Same—Self-Defense—Manslaughter.

Where, upon trial of murder, there was testimony showing an attack upon defendant by the deceased with a pistol, even if not showing sufficient facts to support self-defense, the jury should have been instructed not only upon the law of self-defense, but also upon that of manslaughter.

Appeal from the District Court of Midland. Tried below before the Honorable Henry Russell, Special Judge.

Appeal from a conviction of murder; penalty, five years imprisonment in the penitentiary.

The opinion states the case.

*John B. Littler,* and *J. F. Cunningham,* for appellant.—On question of misconduct of jury: Rushnefsky v. State, 244 S. W. Rep., 373; Early v. State, 51 Texas Crim. Rep., 391; Wood v. State, 84 id., 191.

*Tom Garrard,* Attorney for the State and *Grover C. Morris,* Assistant Attorney and *Birge Holt,* District Attorney, for the State.—Cited: Spencer v. State, 30 id., 46.

LATTIMORE, JUDGE.—Appellant was convicted in the District Court of Midland County of murder, and his punishment fixed at five years in the penitentiary.

Appellant and deceased were neighbors and as we understand the record had had difficulties prior to the day of the homicide. On the morning of that day the two men exchanged hot words and each seems to have prepared himself for trouble by procuring a weapon, deceased obtaining a pistol and appellant a Winchester rifle. The two men were going home from the town of Big Springs, appellant in a wagon having left town first, and deceased in a buggy having overtaken appellant. No eyewitness to the shooting testified except appellant, and if his version of what took place be true deceased overtook him and told him that they would settle their difficulties and proceeded to open fire upon him with the pistol to which appellant replied with the Winchester rifle, shooting the deceased through the arm with one shot and through the body with another. A pistol was found near the body of deceased with one empty cartridge and three which had been snapped but had failed to fire. This pistol was identified as the one which deceased had obtained from a friend. Persons who examined the pistol said that it had been recently fired.

The State was permitted to induce the dying declaration of deceased. A Mrs. Pearl Holler who lived not far from the scene of the shooting and heard it, said that she went down the road and met the parties. The first thing that she heard was a statement by appellant to deceased as follows: "Now try to kill a man". This witness said that appellant came up to her first and wanted her to go down there, that it might save him from the penitentiary; that she could see the gun. Witness told appellant that she would not know anything about the gun if she were to see it, and appellant told her, "Well, come go and carry him a drink of water". She went down to where deceased was lying under a bush and saw a pistol lying near him; she tried to give him water but he could not drink. Appellant left and went to the house of witness. Deceased said he was going to die, that this was his last hour, and further said, "I was waylaid; he saw me coming and got his gun and got out of the wagon."

By a bill of exceptions it is made to appear that when appellant was testifying in his own behalf, after stating the facts surrounding the killing, he was asked by his attorney to state whether or not he waylaid the deceased to which the appellant replied that he did not. At this juncture State's counsel objected to the question and answer and the learned trial judge sustained the objection and at the request of the State instructed the jury not to consider said question and answer. We are at a loss to understand just why this was done. The State had been permitted to prove as part of the dying declaration of deceased that the appellant had waylaid deceased. This expression used by deceased and thus placed before the jury in common understanding would convey a situation which to our minds would be very hurtful and damaging to appellant. The ordinary man would understand from this that the deceased was given no chance, that his assailant took every advantage of him; in the language of common parlance, he laid for him by the way, killed him without an opportunity to defend himself. Whatever the jury may have understood to have been the meaning of the language used by deceased in his dying declaration, it seems clear to us that the appellant should have been permitted in the same language to deny the statement attributed to deceased.

In his motion for new trial appellant sets up misconduct of the jury. If the things testified to as such misconduct be given their full legal effect, we would not think same amounted to misconduct and certainly not misconduct on the part of the jury. A map or diagram of the scene of the killing was introduced in evidence as was also the pistol used by the deceased. Both of these articles were left in the courtroom when the jury retired to deliberate and at some time during their deliberations they sent for said articles which were delivered to them. It is alleged that this was done in the absence of the defendant. We do not think the fact that a deputy sheriff got them and carried them to the jury or that they were handed to the deputy sheriff by some one else, would make of this action any misconduct. It has been often held that the taking of demonstrative evidence by the jury in their retirement constitutes no reversible error in itself, and the fact that the jury requested some officers of the court to bring said articles to their jury room would seem to us no more objectionable than if they themselves had gone in a body to the court room and had secured said articles and taken them to the jury room. There is no claim but that both articles were in evidence; nor is it claimed that any improper use was made of either in the jury room.

There was an exception to the charge of the trial court because same did not submit the law of manslaughter. The appellant having testified to facts showing an attack upon him by the deceased with a pistol even if not showing sufficient facts to support self de-

fense, it would seem to us that the jury should have been instructed not only upon the law of self-defense but also upon the law of manslaughter, and upon another trial, on a similar state of facts, we would suggest that the law of manslaughter be submitted.

For the errors mentioned the judgment will be reversed and the cause remanded.

[This case did not reach the hands of Reporter until April, 1924. Reporter.]

*Reversed and remanded.*