Agnes L. Lachenmyer, Appellee, v. Walden M. Glot-
felty, Trading as Terminal Cab Company, Appel-
lant.

Gen. No. 8,932.

Opinion filed January 17, 1936.

Rehearing denied April 7, 1936.

C. H. Swick and Roy C. Freeman, both of Urbana, for appellant.

Schaefer & Dolan and Frank B. Leonard, all of Champaign, for appellee.

Mr. Justice Allaben delivered the opinion of the court.

Between 11:30 and 12:00 o'clock on the night of April 22, 1934, the plaintiff, Agnes L. Lachenmyer, was driving a Ford coupe in a westerly direction on University avenue, in Champaign, Illinois. Riding as a passenger in the car with her was her sister, Mary E. Lachenmyer. When the Ford coupe reached the neighborhood of the intersection of Fourth street with University avenue, a collision occurred between the Ford coupe and a taxicab owned by the defendant, Walden M. Glotfelty, and which at the time was being operated by an agent of said defendant. As a result of this collision both Agnes L. Lachenmyer, and Mary E. Lachenmyer, her sister, were seriously injured. The two sisters joined as plaintiffs, filed a complaint in the circuit court of Champaign county, against Walden M. Glotfelty, and Toby N. Drollinger, copartners, doing business as "Terminal Cab Company." On motion of Mary E. Lachenmyer the causes were tried separately, and before trial the plaintiff dismissed the complaint as to the defendant Toby N. Drollinger. The original complaint consisted of four counts; the first count was confined to the action of Mary E. Lachenmyer alone; the fourth count charged wanton and wilful conduct, and was dismissed out of the case by the plaintiff before trial. Therefore, this case was tried upon the allegations of negligence of the defendant as alleged in the second and third counts of the complaint as amended. The *ad damnum* on motion was increased from $10,000 to $15,000.

The two counts of the complaint as amended charge that on the night of April 22, 1934, the plaintiff was driving a Ford coupe in a westerly direction on University avenue, in Champaign, Illinois, which thoroughfare was then and there a part of Illinois State Route 25; that at that time and place she was using due care and caution for her own safety and for the safety of others; that at the intersection of Fourth street with University avenue the car which she was driving was struck by a taxicab owned by the said defendant, and operated by his agent; that said collision was caused by the negligent manner in which the agent of the defendant then and there operated defendant's taxicab; that said negligence consisted of the following: That the defendant, by his agent, drove his said taxicab negligently and carelessly at a greater speed than was reasonable and proper having regard for traffic and use of the way; that the defendant's cab was traveling east on University avenue, behind another automobile, and swerved to the left or toward the north side of the street, into the lane of travel of the plaintiff's automobile; that the defendant by and through his agent, failed to keep a proper lookout and that the defendant otherwise, negligently and carelessly drove and operated said cab, whereby and on account of said negligence as above set forth, and while the plaintiff was on the right or north side of the street or roadway and was using due care and caution for her own safety, and as a direct and proximate result of the above mentioned negligence, a collision occurred between the plaintiff's car and the defendant's cab, whereby the plaintiff was greatly injured and damaged, and sustained damages to the extent of $15,000.

The defendant answered the complaint, denying all allegations of negligence, alleging specifically that his cab was at all times operated on the south side of the street, and denied that the plaintiff was free from negligence.

The following facts are admitted: (1) The collision; (2), that University avenue lies in an east and west direction; that at the point where it is intersected by Fourth street, a north and south street, University avenue is 47 feet wide; that immediately east and west of said intersection University avenue is 40 feet wide; that there formerly was a single track street car line, located in the center of University avenue, at the 40-foot widths; that the rails comprising said track had been removed; that the portion of the street formerly occupied with said track was paved with bricks laid longitudinally; that the distance from the former location of the north rail of said track to the north curb of University avenue was 17½ feet; that the distance from the former location of the south rail of said track to the south curb of University avenue was also 17½ feet, except that at the point of intersection of Fourth street with University avenue, the distance from the location of the former south rail of said track to the south curb, was 24½ feet; that the 7 feet additional space being by reason of a cut-back of 7 feet, to provide parking space in front of a hotel; that Fourth street south of University avenue was 39 feet east of the point where Fourth avenue intersects University avenue to the north, there being a jog of 39 feet; that plaintiff was the owner of the Ford coupe and was operating the same at the time of the collision, and that defendant's taxicab was being operated by his agent or employee.

The testimony submitted as to the happening of the accident is quite voluminous. No attempt will be made to set out in detail the testimony of the various witnesses. As actual eyewitnesses the plaintiff produced three, being herself, her sister, and Irvin R. Maxwell who was sitting in a front window on the west side of the hotel, looking north, and who saw the two automobiles collide. The defendant produced two—one, Cleon Parrish, who was operating the taxicab, and

Leland P. Smith, who was walking west on the south side of University avenue, and who heard the sound of the collision, turned around, and ran to the scene of the accident. Besides the witnesses mentioned, the plaintiff produced a Mr. Doig, and Louis Frizzell and Clyde Davis, who testified as to the positions of the automobiles after the accident. In addition to the witnesses mentioned, the defendant also produced James Lindsay, a driver for the University Cab Company, which is operated by the defendant, Glotfelty; Ross Gilmer, also employed by said defendant, Glotfelty, as a cab driver, George F. Miller, another employee of said Glotfelty, all of whom testified as to the position of the automobiles involved, after the accident. A Maude Waters, who at the time of the collision was a passenger riding in the taxicab of the defendant was not called as a witness.

The plaintiff testified that between 11:00 and 11:30 o'clock on the night in question she was driving a Model A, Ford automobile, west on University avenue, going between 15 and 20 miles per hour; that she had city driving lights on, and could see a half block ahead; that she saw cars parked along the north side of University avenue, saw cars approaching from the west, on the south side of the street; that the south wheels of her automobile were north of what had been the north rail of the street car track; that the north side of her automobile was 10 feet from the north curb; that as she passed south Fourth street she glanced down and then looked ahead to see that the path ahead was clear, when some very bright lights suddenly turned out ahead of her, about 20 feet, which lights gleamed intensely into her face; that the south wheels of her automobile were then just north of the former location of the north rail of the street car track; that she tightened her grip on the steering wheel, straightened her leg to apply the brake; that the collision occurred almost instantly; that she had no opinion of the

speed of the other automobile; that she was thrown to the top of the automobile, and then against the front of it. She then testified in detail as to her injuries, the care she received, the time she spent in the hospital in receiving medical attention, and as to her present condition. She further testified that just before the accident the front end of her automobile was just nearing north Fourth street; that there were no cars on the north side of University avenue; that she did not remember any cars being in the intersection; that she was looking directly west, watching for traffic; that she did not see any car coming from the north; that she was north of the former location of the car track, and might have turned slightly, perhaps a foot; that she did not have time to turn to the north or south; that she saw the cab turn out because there were no cars between the cab and her automobile, and the cab was about 20 feet away; that she did not see any car pass in front of her.

Mary Lachenmyer testified that she was riding in the Ford automobile at the time of the collision, and that the automobile was going about 15 miles per hour. Otherwise, her testimony directly corroborates the testimony of the plaintiff. Irvin R. Maxwell testified for the plaintiff, stating that he was sitting in the front window of the hotel on the south side of the street; that he was looking north; that when he first saw the cab it started to pass another cab on the south side of the street; that the cab involved in the accident was going at a speed of 45 miles an hour; that he (Maxwell) was looking north, heard a crash, and saw where the two cars hit head on, which was north of the center of the street; that the Ford automobile was 8 or 9 feet from the north curb line of University avenue, with the front end a foot or a foot and a half farther out than the rear; that all four wheels of the Ford automobile were north of the old street car track; that the

front wheels of the cab were a little south of the north rail of the former street car track; that there were marks on the pavement at the back end of the rear wheel of the taxicab, 15 to 17 feet back. The other witnesses who testified on behalf of the plaintiff, as to the location of the cars after the accident, gave the location of the Ford automobile as well north of the center line of University avenue, and that of the taxicab as also somewhat north of that line.

For the defendant, Parrish, the driver of the taxicab, testified that on the evening in question he was operating the cab on the right-hand side of University avenue, going east, traveling about 25 miles per hour; that he observed a car coming west on the north side of the street, traveling about 25 miles per hour; saw it approach the intersection of Fourth street; that he saw a small truck come from north Fourth street, in front of him, and go south on Fourth street; that this truck was 40 feet away from him when he first saw it; that when the truck pulled out, he pulled his taxicab to the left, to about the center of the street; that as the truck went by he saw the lights of the other automobile directly in front of him, about 30 feet away; that then the collision occurred; that after the collision the north front wheels of the cab were on the former location of the north rail of the street car track; that the north front wheels of the Ford automobile were just over the line, to the north side of the former location of the north rail; that he saw the Ford automobile until the other automobile pulled in between them; that at that time the Ford automobile was on the north side of the street car line, about 100 feet down the street; that at that time the truck was crossing the old street car track moving in a southeasterly direction; that when he again saw the Ford automobile it was 12 or 14 feet away; that the collision happened about when the north wheels of his cab were about on the north rail

of the old street car track; that the two cars collided head on; that he did not think he put on his brakes when he first saw the truck; that he did not sound a horn before the collision; that when he first saw the lights he turned the wheel of his cab to the south and that just a fraction of a second after that the collision occurred; that he was going 20 miles an hour at the time of the collision, and was working for the defendant.

Leland P. Smith, testifying on behalf of the defendant, stated that he was walking west on the south side of University avenue, turned around toward the south, looking over his shoulder, heard the sound of the collision, and turned on around, and ran to the scene of the accident; that as he turned around he observed the tail light of a car disappearing down south Fourth street. He, and the other witnesses who testified on behalf of the defendant, as mentioned, gave the position of the cars after the accident at about the middle of the intersection, placing the Ford automobile a little bit south of the center of the former street car track.

Also on behalf of the plaintiff Dr. J. M. Christie and Dr. John B. Christie, physicians, testified that the plaintiff had a compound fracture of the nose, with bones protruding through the skin, a compound and badly comminuted fracture of the elbow, with bones broken into several pieces, a comminuted fracture of the left knee, and a fracture of the right knee; her legs were placed in casts, her arm was suspended in a Balkan frame, and she had a stymen pin through her ankle; she was in Mercy Hospital for eight weeks, at home in bed for three weeks; that after remaining home she returned to the hospital on two occasions; that she had a permanent shortening of one inch in the left leg; that the motion of the left arm was restricted to a great degree; that she was still under a doctor's care at the time of the trial; that it was cer-

tain there would always be some restriction in the elbow. The medical and hospital expense aggregated approximately $1,000. Several witnesses testified that plaintiff had been in good health prior to the accident, but was very nervous since.

Numerous X-rays of the injured parts were admitted in evidence over the objection of defendant. These X-rays were taken at the request of Dr. J. M. Christie, who used them in connection with his treatment of the plaintiff. Some of the X-rays were taken by Irene Pipgress, X-ray technician at Mercy Hospital in Urbana since June, 1934. She had been an X-ray technician for six years prior to that time, and had taken thousands of X-rays. As to the various pictures identified by her as having been taken and developed by her she described the position of the body, and the relation of the tube to the body. She identified the machine and equipment used as standard X-ray equipment. While she did not use the fluoroscope in taking any of these pictures she testified that she had used the fluoroscope on other photographs to determine the accuracy of the machine; that she checked the milliamperes and voltage to get the proper amount, which is a recognized method among X-ray technicians for testing machines; that in her opinion as an X-ray technician the exhibits which she identified each correctly represented what it purported to show, and that each was diagnostic. The rest of the X-ray pictures were identified by Sister Marcella, a registered nurse, who was X-ray technician at Mercy Hospital for about a year and a half prior to June 1, 1934; that she had been trained by her predecessor, Sister St. Vincent; that she had taken about 250 pictures; that the pictures she identified were developed by her; that standard machines were used; she described the position of the lens with reference to the body of the patient; that she ran the machine to get the correct milliamperes and

voltage; that the machine was in good working order; that she did not make a fluoroscopic examination of the patient before taking any of these pictures; that in her opinion as an X-ray technician the pictures taken by her truly represented what they purported to show.

At the close of plaintiff's testimony the defendant moved the trial court to direct a verdict in favor of the defendant, which motion was denied. The motion was renewed at the close of all the evidence, and was again denied. The cause was submitted to the jury for consideration. The jury returned a verdict finding the defendant guilty and assessing plaintiff's damages at $10,000. Defendant's motions for new trial, and in arrest of judgment, were both overruled. Judgment was entered on the verdict, against the defendant, in favor of the plaintiff, in the sum of $10,000 and costs. It is from this judgment the defendant has prosecuted an appeal to this court, claiming the following errors relied upon for reversal: That the trial court erred in refusing to direct a verdict and to instruct the jury to find the issues for the defendant at the conclusion of the plaintiff's evidence; and at the conclusion of all the evidence; in admitting improper and incompetent evidence on the part of the plaintiff; in admitting in evidence each and all of the X-ray pictures offered by plaintiff; in refusing to exclude the evidence of Sister Marcella from the consideration of the jury; in refusing to incorporate instructions 1 to 12 and 14, tendered by defendant; erred in giving jury instructions in terms of general abstract propositions of law; in refusing to grant a new trial; and refusing to sustain motion of defendant in arrest of judgment.

From a consideration of the testimony it will plainly appear that there was a sharp conflict between the testimony offered by the plaintiff and by the defendant, as to the manner in which this accident happened. If, as testified by the plaintiff, and her sister, they were going west on University avenue, with their lights

dimmed, moving at the rate of 15 miles an hour, and as they came to the intersection of University with Fourth no car passed from north Fourth across their pathway and into south Fourth, and they were driving with their left wheels north of the old north car track, and the defendant going at the rate of 45 miles an hour, as testified by Irvin R. Maxwell, suddenly pulled out of his line of traffic and into the line of traffic of the plaintiff, without any cause other than a desire to pass a taxicab which was ahead of him, and if further, the operator of the taxicab sounded no signal as he did so, and ran head on into the plaintiff's car, north of the north rail of the old street car track, and if he was 20 feet from the plaintiff's car when he pulled out of his line of traffic, and the plaintiff was looking ahead, and attempted to stop, but the impact happened immediately after, then, certainly, the plaintiff was entitled to recover in this case. On the other hand, if the testimony of the defendant's driver is to be believed, then the plaintiff might well be denied recovery. This is equally true as to the evidence of the various witnesses who testified as to the location of the automobiles after the accident. Hence, the trial court committed no error in refusing to direct a verdict at the close of the plaintiff's evidence, or at the close of all the evidence. The question of the negligence of the defendant, and the contributory negligence of the plaintiff were questions of fact, which were properly submitted to the jury, and the jury having by its verdict determined that the plaintiff was free from negligence, and the defendant was guilty of negligence, there is ample testimony to sustain the verdict. The question of the credibility of the witnesses was for the jury, and therefore, no error was committed by the trial court in refusing to grant the defendant a new trial, or in refusing to sustain the defendant's motion in arrest of judgment unless error was committed by the trial court in connection with the admission in evi-

dence of the X-ray pictures, or in its instructions to the jury.

The defendant in his errors relied upon for reversal, or assignment of errors, does not complain that the verdict is excessive, neither is there any such contention in his brief proper, nor is anything said about it in the argument, except the mere statement, ''In conclusion we say that the damages were excessive. . . . '' Indeed, from a consideration of the evidence we do not see how it could well be contended that a verdict for $10,000 was excessive in this case. The plaintiff sustained the various fractures heretofore mentioned, was in the hospital for approximately eight weeks at one time and had to return to the hospital several times thereafter for treatment, had sustained a shortening of one leg, and a very large loss of use of one arm, during the treatment which was administered to her various treatments were given her which caused excruciating pain, and at the time of the trial she was still under treatment, and was in a highly nervous condition. All of this was proved by a well qualified physician. No testimony was offered to refute it. In fact, defendant in his argument admits that ''The collision in question was one which resulted in serious injury to plaintiff, of which fact there can be no doubt.'' With this in view we will consider whether or not the trial court erred in admitting in evidence each and all of the X-ray pictures, and in refusing to exclude the evidence of the witness, Sister Marcella. In view of the fact that the seriousness of the injuries is not disputed, and that their nature could be determined without the use of X-ray pictures, we believe that even if the X-ray pictures, plaintiff's exhibits, were erroneously received, no harm has been done the defendant, and therefore, no reversible error committed. (*King v. Meeker*, 269 Ill. App. 57.) A consideration of the testimony of the doctor that he ordered the X-ray pictures and used them in his treatment of the plaintiff, and taking into

consideration the further fact that both of the witnesses who took the X-rays were skilled X-ray technicians, regularly employed for that purpose by the hospital, and their further description of the method employed, the character of the machine, the position of the lens, and the position of the body, when each picture was taken, was sufficient proof to warrant the trial court in admitting them in evidence. It is true the fluoroscopic test was not used by either of the experts, although one of them had used the fluoroscope in the taking of other pictures to determine the accuracy of the machine. They testified as to other standard tests which they did use to test the accuracy of the machine. An examination of the body with the fluoroscope is not an exclusive method of testing the accuracy of an X-ray film. These experts testified that in their opinion the pictures correctly represented the condition of the part of the body photographed. Under all the circumstances we feel no reversible error was committed by the trial court in admitting these pictures, or in refusing to strike the testimony of Sister Marcella. (*Chicago City Ry. Co. v. Smith*, 226 Ill. 178; *Chicago & Joliet Electric Ry. Co. v. Spence*, 213 Ill. 220.)

Defendant complains that the trial court erred in refusing to incorporate in its instructions to the jury defendant's tendered instructions 1 to 12, inclusive, and tendered instruction 14; also that the trial court erred in giving to the jury the narrative instruction in terms of general abstract propositions of law, which defendant insists were erroneous. The complaint as far as defendant's instruction 1 is concerned may be disregarded because the point was not saved for review. It appears from the record that while the suggestion was presented to the court prior to his preparing his narrative instruction after the court had prepared his tentative draft of the narrative instruction and submitted same to counsel no mention was made

by counsel as to the omission of his suggested instruction 1. Any error was thereby waived. (Civil Practice Act, 1933, sec. 67.) Defendant's instruction number 2 was properly refused because in the narrative instruction was incorporated defendant's instruction number 8, which charged the jury that before the plaintiff could recover she must prove by the preponderance of the evidence defendant's negligence as charged in the complaint, that same was the proximate cause of the injury, and that the plaintiff was free from contributory negligence. (*Peters v. Madigan,* 262 Ill. App. 417; *Gordon v. Current,* 263 Ill. App. 435.) As to defendant's tendered instructions 4, 5, 6, 7, 10, 12 and 14, it appears to this court that all of the matters therein contained which were properly applicable to this case were incorporated in the court's narrative instruction, and the trial court properly refused to reiterate propositions of law which he had previously incorporated in his narrative instruction. The issues in this case were simple, and it was not necessary that the same propositions of law be set out more than once in order that the jury might be properly instructed. Neither can we find any merit in defendant's contention that the narrative instructions given by the court were in such general terms and of such an abstract character as to be of little value and to make the giving of the same erroneous. No specific complaint is set out as to the other instructions, and therefore, they will not be considered. It appears to us that the defendant had a fair opportunity to present his defense; that there was no reversible error in the proceedings in the trial court; the verdict of the jury was supported by the evidence, and the court properly entered judgment on the verdict, which judgment of the trial court so entered on said verdict, should be and is hereby affirmed.

*Judgment affirmed.*