## TEXAS EMPLOYERS' INSURANCE ASSOCIATION V. R. D. CROW.

No. A-2160. Decided June 8, 1949.
(221 S. W., 2d Series, 235.)

*McMahon, Springer & Smart,* and *T. J. McMahon,* all of Abilene, for petitioner.

The Court of Civil Appeals erred in overruling and not sustaining the objections of the insurance company to the action of the trial court whereby the jury was not permitted to have for its examination the x-ray pictures offered for exhibits in the trial of the case. Maryland Casualty Co. v. Dicken, 80 S. W. (2d) 800; England v. Pitts, 56 S. W. (2d) 493.

*Letcher D. King,* of Abilene, and *Alfred M. Scott,* of Austin, for respondent.

There is no substantial difference between ordinary photographs and x-ray pictures such as to make the former written evidence but exclude the latter—the x-rays—from being such written evidence. Dallas Ry. & Ter. Co. v. Orr, 147 Texas 383, 215 S. W. (2d) 862.

MR. JUSTICE HARVEY delivered the opinion of the Court.

R. D. Crow sued Texas Employers' Insurance Association under the provisions of the Workmen's Compensation Act, and the trial resulted in a judgment in his favor. Upon appeal to the Court of Civil Appeals at Eastland this judgment was affirmed. 218 S. W. (2d) 230. Petitioner's application for writ of error was granted upon the point that the Court of Civil Appeals erred in overruling its objections to the action of the trial court in permitting the jury to have for their examination while deliberating in the jury room X-ray pictures which had been introduced in evidence.

Crow alleged in the trial court that while in the course of his employment the ulna, one of the bones of his left forearm, was fractured and that certain consequential involvements resulted in the total and permanent loss of his entire left arm. Upon the trial of the case X-ray photographs were introduced in evidence by both parties to the suit. These pictures were properly identified, authenticated, and explained in detail by doctors testifying in behalf of the respective parties. The pictures so introduced were exhibited to and examined in detail by the jury during the trial and the argument of the attorneys. After the jury had retired to deliberate upon the case, they sent a written request to the court to send the X-ray pictures to the jury room for their examination and consideration, and this request was granted. Petitioner asserts that the court committed prejudicial error in permitting the jury to examine the X-ray photographs in their retirement because of their technical nature, and that the use of them by the jury in their deliberation was inflammatory and prejudicial and probably led to erroneous and improper conclusions by them.

■ Rule 281, T. R. C. P., which is brought forward from Article 2193, R. C. S. of Texas, provides that the jury may take with it in its retirement "any written evidence" with the exception of depositions. In Texas it has been uniformly held by the courts that ordinary photographs constitute "written evidence"

as the phrase is used in Rule 281, and may be taken into retirement by the jury. This principle has become so well established that citation of authorities is unnecessary; however, the latest pronouncement on the matter is the case of Dallas Ry. & Terminal Co. v. Orr, 147 Texas 383, 215 S. W. (2d) 862.

Our Code of Criminal Procedure contains a provision in substance the same as Rule 281 of our Rules of Civil Procedure. It is Article 674, C. C. P., which is as follows: "The jury may take with them any writing used as evidence." Accordingly, it has been held by our Court of Criminal Appeals that the jury may take with them in their retirement papers used by witnesses for comparing handwriting, Webb v. State, 69 Texas Cr. R. 413, 154 S. W. 1013; certified copies of orders putting prohibition in force, Howard v. State, 72 Texas Cr. R. 624, 163 S. W. 429; a diagram of the scene of a homicide, Bell v. State, 97 Texas Cr. R. 390, 261 S. W. 773; and a variety of other instruments. In addition, the rule has been announced by that Court that not only writings used as evidence but anything else properly introduced before the jury may be taken by them to the jury room at their request. Heard v. State, 9 Texas App. 1; Garcia v. State, Texas Cr. App., 207 S. W. (2d) 877; reaser v. State, Texas Cr. App., 40 S. W., 595 (shoes allegedly worn by the defendant) ; Thielepape v. State, 89 Texas Cr. R. 493, 231 S. W. 769 (equipment for making intoxicating liquor) ; Hatch v. State, 6 Texas App. 384 (the jury may use a magnifying glass in examining documentary evidence).

In some jurisdictions it is discretionary with the trial judge as to whether photographs admitted in evidence may be carried by the jury in their retirement. On the other hand, there are several states that have statutes similar to the Texas rule which authorizes papers read in evidence to be carried from the bar by the jury. People v. Balestieri, 23 Cal. App. 708, 139 Pac. 821; Chicago & J. Elec. R. R. v. Spence, 213 Ill. 220, 72 N. E. 796, 104 Am. St. Rep. 213; Kavale v. Morton Salt Co., 329 Ill. 445, 160 N. E. 752; Cooney v. Hughes, 310 Ill. App. 371, 34 N. E. (2d) 566; Barker v. Perry. 67 Iowa 146, 25 N. W. 100. In Texas, as well as in various other jurisdictions, quite frequently objections have been made to the introduction of photographs and to their examination by the jury in its retirement on the ground that they were gruesome; that they were inflammatory; that the pictures in question were technical and could not be understood by the jury without interpretation by an expert; that they were unintelligible to the average juror; and many other objections of like nature. Generally speaking, such objections have not been sustained. The test of the admissibility of a

document that comes within the category of "written evidence" under Rule 281, supra, logically cannot be made to turn upon whether jurors can understand it. There are many technical photographs, such as microscopic photographs; photographic tracings of an injured person's pulse, as well as tracings made by a perimeter to show the condition of one's eyesight; enlarged pictures of fingerprints; and photographs pertaining to astronomical subjects. Deeds, maps, abstracts of title, and so on, may or may not be understandable to jurors; however, they are the final arbiters in passing on disputed matters, and the writings introduced in evidence, for whatever they may be worth, should be available for inspection and consideration by the jury. The same objection can be made to many ordinary photographs in regard to their not being intelligible to jurors that might be made to X-ray photographs.

It has become a matter of common knowledge that X-ray pictures only reflect shadows of solid or hard substance. A non-expert may see whatever the shadowgram reflects, the same as an expert. What is apparent to one would be apparent to the other. The science of X-ray photography has developed to the point that it is customary for dentists and doctors to make their own pictures. The things portrayed in such pictures are depicted with such clarity and definiteness that quite often no interpretation of them is needed. Certainly, the jury, having inspected X-ray photographs during the trial of the case after their proper introduction and irrespective of whether there has been an explanation of them, should be permitted to re-examine them in the jury room if in their opinion they deem it necessary. We quote from Houston & T. C. R. R. v. Shepard, 54 Texas Civ. App., 596, 118 S. W. 596, 601, error refused: "When properly taken, as these views were shown to have been (X-ray pictures), it is a matter of such common knowledge that they accurately represent what they purport to show that even courts may take cognizance of the fact." If the pictures have been properly introduced in evidence, whatever their nature, then the jury is entitled to examine them after they have retired to deliberate upon the issues submitted to them. Of course, quite often there have been situations where photographs have been admitted on the trial of a case which portrayed things immaterial to any issue in the case and which produced harmful results. In instances of that kind the pictures were improperly and erroneously received, and should not have been admitted in evidence at all.

■ The precise point with which we are concerned in this case is whether or not X-ray photographs are "written evidence"

and come within the same category as ordinary photographs under Rule 281. We see no sound reason for making a distinction between the two types of photographs, especially in view of the many decisions relating to the admissibility of ordinary photographs to which objections have been made on the ground of their being technical and unintelligible to the average juror. There is no case in this state which passes upon the exact question under consideration. However, in other jurisdictions that have statutes with provisions practically identical with those of Rule 281 of our Rules of Civil Procedure, the matter has been passed upon. In the case of Chicago & J. Elec. R. R. v. Spence, 213 Ill. 220, 224, 72 N. E. 796, 798, 104 Am. St. Rep. 213, decided by the Supreme Court of Illinois in 1904, the court stated that "it was not error to allow the jury to take the skiograph with them when they retired to consider of their verdict. Paragraph 56 of the practice act (3 Starr & C. Ann. St. 1896, p. 3054, c. 110) authorizes 'papers read in evidence, other than depositions,' to 'be carried from the bar by the jury.' 'Papers in evidence' clearly embrace photographs or skiographs offered or received in evidence." Cooney v. Hughes, 310 Ill. App. 371, 34 N. E. (2d) 566; Kavale v. Morton Salt Co., 329 Ill. 445, 160 N. E. 752. Also, the Supreme Court of Minnesota in an early case, Brookman v. Chicago Great Western R. R., 116 Minn. 409, 133 N. W. 969 (1912), very briefly and definitely holds that X-ray photographs received in evidence were properly carried by the jury into the jury room. The Superior Court of Pennsylvania has adopted the same viewpoint. Becker v. Prudential Ins. Co. of America, 124 Pa. Super, 138, 188 Atl. 400. There is no authority of which we are cognizant that holds to the contrary.

Since the cases referred to were decided many, many years ago, and in view of the extraordinary advancement and improvement in the art of roentgenology, and the extensive use of cathode-ray or vacuum-ray photographs since then, courts seldom have had occasion to pass upon this question. Perhaps the reason is that the precedents referred to have been uniformly accepted as sound and therefore the point has been raised quite infrequently. Scott, in his work on Photographic Evidence, sec. 791, p. 711, quotes from a decision of the Supreme Court of Wisconsin, Mauch v. City of Hartford, 112 Wis. 40, 49, 87 N. W. 816,819 (1901) as follows: "It is the duty of courts to use every means for discovering the truth reasonably calculated to aid in that regard. In the performance of that duty, every new discovery, when it shall have passed beyond the experimental stage, must necessarily be treated as a new aid in the administration of justice in the field covered by it. In that view courts

have shown no hesitation, in proper cases, in vailing themselves of the art of photography by the X-ray process." The author, in this same section, makes the following observation: "Today, because X-ray photographs have been so generally admitted in evidence by trial courts throughout the country, their admissibility when properly verified, no longer remains an open question." According to this same author (Scott), there is a new process of stereoscopic radiography, called trivision, which makes it possible for X-ray pictures to be examined by jurors without the use of any viewing device.

It is quite obvious that skiagraphs, which are nothing more nor less than photographs of the interior of the object portrayed, and ordinary photographs, which are pictures of the exterior, should be treated alike in relation to their admissibility and their examination by the jury. In Wigmore on Evidence 3rd ed., vol. 3, 1947 pocket supplement, sec. 792a, it is stated: "The fallacy of limiting the use of photographs for the purpose of illustrating the testimony of witnesses is clearly presented in a most illuminating article; the following passage therefrom reflects the careful analysis made of the problem encountered:

" 'If a defective eye with a damaged optic nerve conveys an impression (gained in twilight or under other deceptive visual conditions) to a diseased brain, even after the eroding effects of weeks have advanced the process of forgetting, the owner of the eye—though he may be a simple soul of limited intelligence and an even more limited vocabulary—will be permitted to describe in Court what he *thinks* that he *remembers* that he *saw;* but, if a camera with cold precision and absolute fidelity records the view permanently and with minute accuracy that view is kept from the jury, perhaps (under the *Honeycut* case), or its use is sharply circumscribed (under the 'illustration' rule). Such strange logic has a baffling, Alice-in-Wonderland quality far removed from the realistic directness of the man-of-the-street. Perhaps only the logic of the law, wrought from centuries of philosophic inbreeding and tortured at times by the real and apparent need of a stretching or confining the implications of precedent, could arrive at such a result. Whatever the cause, it is fortunate that the X-ray cases have already recognized the proper solution; i. e., a picture taken with adequate equipment under proper conditions by a skilled photographer is itself substantive evidence to be weighed by the jury. * * * Thus, sitting astride some convenient analogy, the law continued to move forward: in the distant past the use of diagrams were accepted in evidence; then in time more precise diagrams, or plats, were accepted; just yesterday upon the

double analogy to maps and to view by the jury, first photographs were recognized followed swiftly by X-ray photographs; today the court allows moulage casts as another form of photography and in time they will be recognized as substitutes for views by the jury, for they preserve in exact, fixed forms the replicae of the real evidence; * * *.' " "The Camera Goes to Court," by D. S. Gardner, 24 N. C. L. R., p. 233 at p. 245.

As early as the year 1905 the Supreme Court of Iowa, in State v. Natheson, 130 Iowa 440, 444, 103 N. W. 137, 139, 114 Am. St. Rep. 427, 8 Ann. Cas. 430, had occasion to say:

"The process of X-ray photography is now as well established as a recognized method of securing a reliable representation of the bones of the human body, although they are hidden from direct view by the surrounding flesh, and of metallic or other solid substances which may be imbedded in the flesh, as was photography as a means of securing a representation of things which might be directly observed by the unaided eye at the time when photography was first given judicial sanction as a means of disclosing facts of observation; and for that purpose X-ray photographs, or sciagraphs, or radiographs, as they are variously called, have been held admissible on the same basis as photographs. (Citing authorities.)" See, also 20 Am. Jur., Evidence, sec. 736, p. 614.

In law, in logic, by analogy, and under the great number of adjudicated cases that have ruled upon various phases of the admissibility of X-ray photographs and their use and inspection by juries, there can be no doubt but that when such pictures are properly identified and authenticated they are in the same category as ordinary photographs. Therefore, in this state, under the construction of the phrase "written evidence" they may be carried to the jury room by the jury in their retirement and be inspected by them. The trial court and the Court of Civil Appeals correctly decided the point in issue, and the judgment of the Court of Civil Appeals is affirmed.

Opinion delivered June 8, 1949. No rehearing filed.