Tracey Virgil **WHAN**, Appellant,

v.

The **STATE** of Texas, Appellee.

No. 41789.

Court of Criminal Appeals of Texas.

Feb. 26, 1969.

Rehearing Denied April 23, 1969.

Frank Mabry and Forrest F. Baird, by Frank Mabry, Houston, Mitchell, Gilbert & McLean, by Arthur Mitchell, Austin (on appeal only), for appellant.

Carol S. Vance, Dist. Atty., James C. Brough and Erwin G. Ernst, Asst. Dist. Attys., Houston, and Jim D. Vollers, State's Atty., Austin, for the State.

## OPINION

WOODLEY, Presiding Judge.

The offense is murder; the punishment, death.

The indictment alleged that Max Thomas Yeary and appellant did with malice aforethought kill Edward Jordan by shooting him with a gun. The second count further alleged that the murder was committed by the said Yeary and appellant while they were engaged in the perpetration of the crime of robbery.

The offense was alleged to have been committed on or about December 29, 1966. The indictment was returned January 26, 1967.

On May 10, 1967, severance was granted Yeary; the district attorney gave notice that he would seek the death penalty as the proper punishment for appellant Whan, and Hon. Frank Mabry and John Baker were appointed to represent appellant.

On May 29, 1967, the case was continued on application of appellant and set for September 11, 1967.

On August 28, 1967, the court granted appellant's motion for Expenditures not to exceed $250.00 for investigation and expert testimony as to the mental condition of appellant.

Following pretrial hearing on appellant's motion for discovery and the selection of a jury, appellant pleaded not guilty to the first count of the indictment and guilty to the second count, but changed his plea to guilty to the indictment after the witnesses were sworn, which plea of guilty was accepted and entered after proper admonition of appellant by the court as to its consequences.

Appellant's first ground of error complains that the selection of the jury and excusing of prospective jurors for cause who had conscientious scruples against capital punishment was in violation of and reveals the same situation as existed in Wither-spoon v. Illinois, 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed. 776, decided June 3, 1968. The voir dire examination of certain prospective jurors he alleges was preserved to show the means, mode and conduct of the court in excusing jurors for cause in anticipation of the opinion by the Supreme Court in Witherspoon.

The record includes the voir dire examination of 20 prospective jurors, 10 of whom were challenged for cause by the state because of their conscientious scruples against the death penalty. Only one juror was peremptorily challenged by the state.

■ The record does not support the contention that jurors were excluded simply because they expressed conscientious scruples against the infliction of death as punishment for crime. To the contrary, the jurors who were challenged by the state and excused were further examined, some by the court, as to whether their conscience would permit them to impose the death penalty, and answered in the negative.

■ In view of the fact that the state exercised but one of its 15 peremptory challenges, the excusing of one or two prospective jurors on the state's challenge for cause would not constitute reversible error. Scott v. State, 434 S.W.2d 678, 683.

■ The record reflects compliance with the Texas practice in regard to the excusing of jurors challenged by the state on the ground of conscientious scruples against the infliction of death as punishment for crime.

■ Pittman v. State, 434 S.W.2d 352, and Scott v. State, supra, sustain our conclusion that the Texas practice followed by the court in the selection of appellant's jury does not offend the rule in Witherspoon v. Illinois, supra.

Appellant's second ground of error complains of the refusal of the court to allow him to perfect a bill of exception.

This ground of error refers to the following proceedings reflected by the court reporter's transcription of his notes.

"MR. MABRY: Your Honor, again, as before in anticipation of the State's attorney calling the deceased's widow, I would like for him to call her outside the presence of the jury so that we can elicit from her any testimony that might be material in this cause and show her physical condition and show she can testify to nothing that would be material or relevant to this case. In her physical condition it would do nothing but inflame the minds of the jury and gain sympathy.

"THE COURT: That motion will be overruled at this time.

"MR. MABRY: Note our exception.

"MR. ERNEST: We will call Mrs. Jordan.

"MR. MABRY: Since Mr. Ernest has called her, we would like to have her outside the presence of the jury to perfect my bill.

"THE COURT: For what purpose?

"MR. MABRY: To show that any testimony she might offer would be immaterial and irrelevant and do nothing except bolster the testimony of other witnesses, can do nothing to enable the State to make their case in any way. She knows no facts surrounding the alleged murder and there is no controversy as to any items introduced into evidence. They all have been properly identified and admitted.

"THE COURT: That motion will be denied.

"MR. MABRY: Note our exception.

"THE COURT: Bring the jury in, Mr. Payne.

(At this time the jury returned to the courtroom in the custody of the bailiff and in the presence of the jury the following proceedings were had:)

"MRS. JEWEL ELIZABETH JORDAN, called as a witness on behalf of the State, after having first been duly sworn, testified as follows:

"DIRECT EXAMINATION

"Questions by Mr. Ernst:

"Q. Will you state—

"MR. MABRY: At this time the Defense is going to object to the calling of the widow and ask that the jury be removed so that we can make a bill as to the materiality of any evidence she might offer.

"THE COURT: That's overruled.

"MR. MABRY: Note our exception."

Appellant's brief sets out that from the very beginning he anticipated that the district attorney would call the widow of the deceased as a witness. This is verified by the record referred to which reflects that appellant's counsel, on the first day of the trial, vainly sought to "suppress any testimony offered by the widow unless it's something that's material to the offense with which the defendant is charged and something that's not in controversy. We are asking that the Court suppress any testimony from her unless she can testify to something of the actual killing."

Appellant's brief further recites in connection with this ground of error: "Mrs. Jewel Elizabeth Jordan, the wife of the deceased, was a pitiful sight to behold. She was handicapped as a result of a leg injury in 1956 and there were no muscles left in her leg as a result of the injury and she had to have a walker in order to get about. She had to be helped wherever she went. * * *

"When Mrs. Jordan, the widow of the deceased, took the witness stand, she did not come in through the regular door used by the witnesses but came from the front of the Courtroom and walked the entire length of the Courtroom in the presence of the jury, with the aid of a bailiff, using her

walker. The entrance made by the widow of the deceased was extremely harmful to the rights of the Defendant in his trial. The purpose of the Defendant requesting the Court to allow him to perfect his bill was so that all of the matters and harmful effects surrounding the testimony of Mrs. Jordan could be shown at a later date."

■■ We are unable to agree that appellant was denied the right to perfect a bill of exception, in violation of Art. 40.09 Vernon's Ann.C.C.P., in regard to the action of the court in refusing to suppress testimony to be offered by the widow of the taxi driver robbed and murdered by appellant and his co-indictee, and see no merit in the contention that because of her handicap and physical appearance the widow should not have been allowed to appear before the jury as a witness for the state.

■ The state's right to introduce evidence is not restricted by the entry of a plea of guilty by the defendant, or by his admission of facts sought to be proved. 56 Tex.Jur.2d 478, Trial, Sec. 130; Beard v. State, 146 Tex.Cr.R. 96, 171 S.W.2d 869.

Mrs. Jordan identified as belonging to the deceased a pair of glasses found about a half mile from the body of her husband, a wrist watch recovered by Officer Atkins in a criminal investigation office of the Sheriff's office after appellant's co-indictee pointed it out and said he had placed it there, and a pair of trousers found in the abandoned taxicab some ten miles from the place where the body was found.

The record reflects that appellant and Thomas Yeary, pursuant to their plan to rob a taxicab driver, about 8:30 P.M. on December 29, 1966, called from a Lounge for a cab. Edward Jordan was the cab driver who responded to the call. Appellant and Yeary told the driver to take them to Ellington Air Base. On the way, appellant stuck a gun at the driver's head and ordered him to drive on Hall Road and an out of the way road in the southern part of

Harris County, where they forced him to disrobe, robbed and murdered him.

The body of the driver, completely nude except for his socks, was found about midnight. A cigarette in his mouth was still lit and burning.

Six hulls fired from a .38 super automatic pistol were scattered up the highway and there was a pair of shorts lying on the road about three feet from the body. Three bullets were removed from the ground beside the body at the scene.

Cause of death was established by the testimony of Dr. Jachimczyk, Chief Medical Examiner for Harris County who did the post mortem examination, as a gunshot wound of the chest. A second gunshot wound and bruises and cuts in a band over the left side of his head were also found on the body.

The taxicab was found about 10:30 the next morning some ten miles from the place where the body had been found.

■ There is no limit, either by statutory direction or judicial interpretation, upon the kind, character or amount of relevant testimony which the state may introduce upon a plea of guilty. Booker v. State, 124 Tex.Cr.R. 562, 63 S.W.2d 1033, 1034.

■ The court did not err in overruling appellant's objection to the calling of Mrs. Jordan as a witness for the state. Appellant's ground of error No. 2 which complains of the denial of his request that the witness be first called outside of the presence of the jury "so that the bill of exception could be perfected," is overruled.

The record does not support appellant's contention that he was "precluded from painting the necessary word picture for the court of appeals at a later date."

Appellant's next contention is that the question of insanity was raised by the testimony of appellant which was verified by the report of Dr. Benjamin Sher, and the

court should have withdrawn the plea of guilty and entered a plea of not guilty the minute any issue of insanity was raised; and should have had appellant examined to determine his mental competency rather than rely upon the unsworn statement of Dr. Sher and the stipulations contained in the statement of facts.

Appellant was the first witness called by the defense. Under questioning of his own counsel, appellant testified that it was not his intention to state that he was insane at the time of the offense—"What I meant was I had been drinking quite a bit and I didn't actually know I was shooting at him. I was shooting around him, I thought. * * *

"Q. And you are not contending an insanity plea in this case?

"A. No, sir.

"Q. And you have asked me to apprise the Judge of this, have you not?

"A. I did.

"Q. It is still your intention to maintain your plea of guilty in this matter?

"A. Yes, sir.

  * * * * * * *

"Q. The reason you did not know what you was doing is you was under the influence of alcohol you are telling the court?

"A. Yes, sir."

Following said testimony copy of Dr. Sher's psychiatric report and the report of medical doctor Proler, by whom appellant was given an electrogram test, were furnished for his consideration, the court found that appellant was not incompetent to make a rational defense and to assist his counsel.

The judgment recites that the defendant was admonished as to the consequences of his plea of guilty and persisted in entering said plea, "and it plainly appearing to the court that the defendant was sane

* * * the said plea was accepted by the court and is here entered upon the minutes." (Art. 26.13 V.A.C.C.P.)

The reports referred to, which are before us as a part of the record, support the court's findings in regard to appellant's mental competency. A jury finding on such issue was not required.

Appellant's version of the murder, shown by his confession and his testimony, was that all he and Yeary wanted was money and the cab for a get-away car; that he made the deceased get out of the cab, undress fully * * * "I figured if he was out in the country in a desolate spot, all you had was farm houses around there and if he walked to one of the houses naked he would get in a lot of trouble. At that time they were having a bunch of rape cases going on around that area, people being molested, people running around with no clothes on, and it would give us plenty of time to make a get-away. Upon leaving when we got him out of the car, Thomas started driving the car, the cab, and I was on the passenger's side of the front seat then and when we started moving I stuck the gun out the window and fired several shots in the ground at his feet, and he said please don't shoot me and I said just stay where you are for five minutes, don't move, and I went ahead and fired the gun some more thinking I had missed and shot over his head and evidently some of the slugs hit him, and I didn't know about the bullets hitting him until the next morning when I read it in the newspaper.

"Q. At that time was you under the influence of alcohol?

"A. Yes sir."

The remaining grounds of error are without merit.

The judgment is affirmed.

DOUGLAS, J., not participating.

ONION, Judge (concurring).

I reluctantly concur. Appellant entered a plea of guilty before the jury. "It is well established that a plea of guilty to a felony charge before a jury admits the existence of all facts necessary to establish guilt and, in such cases, the introduction of testimony by the State is to enable the jury to intelligently exercise the discretion which the law vests in them touching the penalty to be assessed." Darden v. State, Tex.Cr.App., 430 S.W.2d 494 and cases there cited.

This is not, of course, the rule where a trial by jury is waived and a plea of guilty to a felony is entered before the trial judge. In such cases the prosecution is under the burden of introducing evidence sufficient to show the guilt of the accused as charged. Article 1.15, V.A.C.C.P. Burks v. State, 145 Tex.Cr.R. 15, 165 S. W.2d 460.

The rule in a felony plea of guilty before the jury does not, however, prevent the State from introducing all relevant evidence to enable the jury to decide what punishment should be assessed. Beard v. State, 146 Tex.Cr.R. 96, 171 S.W.2d 869.

In the case at bar, in addition to the guilty plea, the State introduced evidence as to every element of the case consisting of some three hundred pages of record. It was further stipulated that the clothing and personal effects that the deceased had on his person prior to his death were in fact the deceased's. Nevertheless, the State called the deceased's wife as a witness over the strenuous and repeated objections of appellant's counsel. Certainly the fact that the witness was the deceased's wife, that she was a cripple or had been previously injured years before, or that her testimony was cumulative would not render her an incompetent witness. Still, it is difficult to believe that the State was more concerned with presenting her cumulative testimony than in exhibiting her physical condition to the jury. This is particularly true when it is considered that the State elicited from her: "Q. Who have you had to help you since your husband was mur-

dered? A. I moved to my sister's up in Ingram, Texas," and then sought to show that the deceased's brother was an instructor at the University of Mississippi.

While the State is certainly not to be commended for such action, I am unable to convince myself that this instance of irrelevant, immaterial and possibly inflammatory testimony standing alone is of sufficient magnitude to require a reversal of this cause. Ramos v. State, Tex.Cr. App., 419 S.W.2d 359; Salazar v. State, Tex.Cr.App., 397 S.W.2d 220; Cavarrubio v. State, 160 Tex.Cr.R. 40, 267 S.W.2d 417; Chapman v. State, 136 Tex.Cr.R. 285, 124 S.W.2d 112.

I concur.

MORRISON, J., joins in this concurrence.