PETER J. LADETTO *vs.* COMMONWEALTH.

Suffolk.  October 6, 1969. — December 29, 1969.

Present: WILKINS, C.J., SPALDING, CUTTER, KIRK, & REARDON, JJ.

*Jury and Jurors. Practice, Criminal,* Examination of jurors, Capital case, Judicial discretion. *Constitutional Law,* Trial by jury.

No error under *Witherspoon* v. *Illinois*, 391 U. S. 510, appeared at the trial of an indictment for first degree murder in excusing from service on the jury certain veniremen whose answers to questions by the judge, considered in the light of previous general instructions by the judge, showed that such veniremen's opinions opposing the death penalty would preclude them from reaching an impartial decision as to the guilt of the defendant on the evidence; or in refusing to ask the veniremen whether they had any opinion which would preclude them recommending life imprisonment in the event of a finding of guilty of murder in the first degree.

.PETITION for a writ of error filed in the Supreme Judicial
Court for the county of Suffolk on June 4, 1968.

.The case was heard by *Spiegel*, J.

*Joseph J. Balliro* for the petitioner.

*Ruth I. Abrams*, Assistant Attorney General, for the Commonwealth.

REARDON, J.   The petitioner was convicted of murder in
the first degree and appealed under the provisions of G. L.
c. 278, §§ 33A–33G.  Judgment of death was affirmed on
May 21, 1965, in *Commonwealth* v. *Ladetto*, 349 Mass. 237.
In this proceeding on a writ of error the petitioner seeks to
set aside the judgment.   The single justice made findings
and rulings and ordered the judgment affirmed.   The petitioner claimed an exception which brings the case here.

We refer to the findings of the single justice.   The assignments of error pressed by the petitioner relate to the excusing
of certain jurors over the objections of Ladetto's counsel and
to the denial of Ladetto's motion to have the court ask a
certain question of prospective jurors.

The petitioner's present assignments of error were considered on the appeal in *Commonwealth* v. *Ladetto*, *supra*,
which had been tried in 1964.   In essence, the petitioner is
requesting reconsideration of those assignments of error in
the light of *Witherspoon* v. *Illinois*, 391 U. S. 510, decided
June 3, 1968.   While the petitioner claimed that a sizeable
number of veniremen were improperly excused, he limits
himself presently in that assertion to the cases of but three.
Colloquy on voir dire of the three jurymen is set out in the
margin.[1]

---

[1] VENIREMAN STAPLETON.   Q. "Have you any opinion which would prevent you from finding the defendant guilty of an offense punishable by death"?
A. "Well, sir, since His Excellency the Governor has made an issue of that,
it's caused a little doubt in my mind as to whether it should be so, whether
the law should be changed or not."   Q. "Well, is your state of mind ——"
A. "It isn't settled, Your Honor.  I haven't quite — I can't say that it is
settled.   I've discussed it with or thought of it a good many times and I
haven't really come to any decision on it as to whether I think it should or
should not be changed."   Q. "So at the present time you cannot say that
you have an opinion one way or the other"?  A. "That's right."  Q. "Isn't
that true"?  A. "That's right."  THE COURT.  "This juror in my opinion
is not indifferent and may be excused."

Prior to questioning the individual veniremen the judge stated to the entire venire: "It is an ancient practice in this Commonwealth that during the selection of the panel of the jurors, we deal with one juror at a time, and the result is that when I finish what I have to say you will be excused . . . and you will then be brought back here one at a time and at that time questions will be put to you. These questions that will be put to you will require from you the answers imposed upon you by your conscience in the discharge of this high and sacred duty . . . .

"These questions which I will put to you I am going to state now, so that, as you leave, you may consider what the true answer is . . . . 'Have you any opinion that would prevent or preclude you from finding a defendant guilty of an offense punishable by death?' . . . Now the last question that you will be asked is whether or not you hold views which would prevent or preclude you from returning a verdict of guilty of an offense punishable by death.

"Here I must state to you that it is the law of this Commonwealth that murder in the first degree is punishable by death. Later on, when a jury has been chosen, I will have to expound upon certain aspects of the law; but for our present purposes . . . I want to repeat again that it is the law in this Commonwealth that murder in the first degree is punishable by death.

"If you have any opinion against capital punishment, then you must ask yourselves whether that opinion would conscientiously preclude — and let me stress that — conscientiously preclude. In other words, would such a con-

---

VENIREMAN LESSER, JR. Q. "Have you any opinion which would prevent you from finding a defendant guilty of an offense punishable by death"? A. "I do, Your Honor." Q. "What is that opinion"? A. "Well, I haven't shot a rabbit since I was fifteen, sir." Q. "Are you opposed to the death penalty"? A. "I am sir, Your Honor." THE COURT. "You may be excused."

VENIREMAN CARBONE. Q. "Have you any opinion which would prevent you from finding a defendant guilty of an offense punishable by death"? A. "I don't believe in the death punishment." Q. "You don't believe in the death penalty"? A. "No." Q. "This would prevent you from returning a verdict of guilty even if you were satisfied beyond a reasonable doubt"? A. "Well, for punishment of death, I don't believe in it." Q. "You don't believe in it"? THE COURT. "Mr. Carbone, I will excuse you."

scientious opinion prevent you from finding the defendant guilty should you be convinced of his guilt on the evidence beyond a reasonable doubt.

"Here there may very well come the necessity on the part of all of you to search your hearts and your conscience in order that you may answer this question forthrightly, for it is only a stern and conscientious objection which would justify your saying that you would be precluded by such a belief . . . ."

The question which Ladetto now contends should have been put to the prospective jurors was as follows: "Have you any opinion that would preclude or prevent you from *recommending* life imprisonment for a defendant found guilty of murder in the first degree"?

The single justice found that the trial judge anticipated the basic holdings of the *Witherspoon* case, carefully instructed the venire, and properly concluded from his observations that those who were excused would be unable to "reach an impartial decision as to the guilt of the defendant." He further noted that the Commonwealth was entitled to forty-two peremptory challenges but employed only nine of them, and that the reasonable inference was that if the judge had not excused the three jurors in question the Commonwealth would have employed the necessary number of challenges to exclude these individuals from the jury.

1. As the single justice stated, "General Laws c. 265, § 2, provides that '[w]hoever is guilty of murder in the first degree shall suffer the punishment of death, unless the jury shall by their verdict, and as a part thereof, upon and after consideration of all the evidence, recommend that the sentence of death be not imposed . . . .' General Laws c. 278, § 3, provides that '[a] person whose opinions are such as to preclude him from finding a defendant guilty of a crime punishable with death shall not serve as a juror on the trial of an indictment for such crime.' The petitioner does not challenge the constitutionality of these statutes but questions whether in implementing them the judge acted con-

trary to the decision in the *Witherspoon* case." The Massachusetts statute differs from the Illinois statute discussed in the *Witherspoon* case, Ill. Rev. Sts. c. 38, § 743 (1959), which reads: "In trials for murder it shall be a cause for challenge of any juror who shall, on being examined, state that he has conscientious scruples against capital punishment, or that he is opposed to the same." The Illinois statute, according to the *Witherspoon* case, "armed the prosecution with unlimited challenges for cause in order to exclude those jurors who, in the words of the State's highest court, 'might hesitate to return a verdict inflicting [death].'" *Witherspoon* v. *Illinois, supra,* at pp. 512–513. The Massachusetts statute, G. L. c. 278, § 3, on the other hand, is patently phrased in far narrower terms. The court in the *Witherspoon* case said, "[N]othing we say today bears upon the power of a State to execute a defendant sentenced to death by a jury from which the only veniremen who were in fact excluded for cause were those who made unmistakably clear (1) that they would *automatically* vote against the imposition of capital punishment without regard to any evidence that might be developed at the trial of the case before them, or (2) that their attitude toward the death penalty would prevent them from making an impartial decision as to the defendant's *guilt.*" Pp. 522–523, n. 21. Of these veniremen in the instant case the judge initially asked each of them the question as to whether he would have an opinion which would prevent him from finding the defendant guilty of an offence punishable by death. It is clear from the colloquy set out in the margin that an answer of venireman Carbone indicated his strong feelings against capital punishment, and that while his last answer might not have been totally responsive read in the light of the judge's general instructions and his specific inquiries there could be little doubt that he was properly excused. Venireman Lesser replied ambiguously that he had an opinion which would prevent him finding the defendant guilty of an offence punishable by death. In the case of venireman Stapleton, there was sufficient indication to the judge that he did not possess the

impartiality required of a juror.  *State* v. *Mathis,* 52 N. J. 238, 247–248.. We see no error in the determination of the trial judge that the attitude of these three prospective jurors toward the death penalty would make it difficult for them to engage in an unprejudiced determination of guilt. Their ability to so engage was within the province of the trial judge to determine.  See *Commonwealth* v. *Subilosky,* 352 Mass. 153, 159.

. We agree with the single justice that the trial judge was warranted "in concluding that the veniremen who were excused would be unable to reach an impartial decision as to the guilt of the defendant."

2. Nor is there error in the denial of the motion to have the judge ask prospective jurors the question set out above. We have previously stated in *Commonwealth* v. *Ladetto,* 349 Mass. 237, 245, that "it would have been a wise exercise of discretion for the judge to inquire of veniremen on the voir dire whether they had any opinion which would prevent their making . . . a recommendation" that the death sentence be not imposed.  It is not our view, however, that failure to ask this question or others similar to it constitutes an error of constitutional proportions under the *Witherspoon* case.  As the single justice observed, the *Witherspoon* decision "explicitly preserved the people's right to have a jury that would not work a de facto abolition of capital punishment."  See *Commonwealth* v. *Nassar,* 354 Mass. 249, 252–254, and cases cited.

*Exceptions overruled.*