Ronnie Earl **TEZENO**, Appellant,

v.

**The STATE of Texas, Appellee.**

**No. 44331.**

Court of Criminal Appeals of Texas.

March 15, 1972.

Rehearing Denied May 31, 1972.

Opinion Following Commutation
Nov. 16, 1972.

Bobby H. Caldwell, Houston, for appellant.

Carol S. Vance, Dist. Atty., James C. Brough and Bob Bennett, Asst. Dist. Attys., Houston, and Jim D. Vollers, State's Atty., Robert A. Huttash, Asst. State's Atty., Austin, for the State.

## OPINION

ROBERTS, Judge.

This is an appeal from a conviction for murder with malice. Trial was before a jury, which assessed the death penalty.

The appellant entered an automobile supply house in the city of Houston. An employee of the firm noticed appellant standing near the front of the store, and approached him and asked if he could help him. The appellant replied that he was "just looking." The employee then returned to his place at the counter and began examining a catalog. The deceased and another employee were standing behind a counter, talking on telephones. At this time appellant went to the center of the store, pulled out a pistol and stated, "This is a stickup. Give me your money. Put them phones down. I said put them telephones down." He then fired the pistol, the bullet striking the deceased in the chest. The deceased died from this wound.

Appellant then took money at gunpoint from an employee who had removed it for him from the cash register. He also approached a salesman who was in the store at the time and asked for his billfold, although he did not take it. At that time another person, a salesman, entered through the front door and appellant fled.

Appellant raises eleven grounds of error.

■■■ Appellant asserts by his first and ninth grounds that the trial court erred in denying his motions to quash the jury panel and to challenge the composition of the jury. He contends that the jury was composed only of whites and that blacks were excluded from the jury by the State's use of its peremptory challenges. In his motion to quash the panel, he contended "that the members of the jury panel do not constitute the peers of the defendant," and that "to require the defendant to be tried by a jury other than those individuals of his class is a violation of equal protection and due process . . . ." He also claims that the jury qualifications set out by the Texas statutes are unconstitutional.

Appellant's first ground of error is overruled. The record does not disclose the race of the members of the jury, nor the race of the various members of the panel. Therefore, this Court cannot review appellant's contention. In addition, the mere fact that blacks were excluded from this particular jury, even if supported by the evidence, would not constitute a violation of the equal protection clause of the Fourteenth Amendment to the United States Constitution, unless a systematic and regular pattern of exclusion is shown. Swain v. Alabama, 380 U.S. 202, 85 S.Ct. 824, 13 L.Ed.2d 759 (1965); Ridley v. State, Tex. Cr.App., 475 S.W.2d 769 (delivered January 18, 1972); Hardin v. State, 475 S.W. 2d 254 (Tex.Cr.App.1971); Walker v. State, 454 S.W.2d 415 (Tex.Cr.App.1970); Turner v. State, 462 S.W.2d 9 (Tex.Cr.App. 1969) rev'd. on other grounds, 403 U.S. 947, 91 S.Ct. 2289, 29 L.Ed.2d 858 (1971); Johnson v. State, 411 S.W.2d 363 (Tex.Cr. App.1967).

■■ Appellant's ninth ground of error is overruled. The thrust of appellant's motion to quash the panel was that he was neither a freeholder nor a householder and that to require that prospective jurors be such denied him the right to be tried by a fair and impartial jury. This contention is without merit. The case came to trial on March 31, 1970. That a juror be either a freeholder or householder was eliminated as a qualification, effective as of September 1, 1969. Article 35.12, Vernon's Ann. C.C.P., as amended, Acts 1969, 61st Leg., p. 1364, ch. 412, § 2; also see Article 35.16 (a), V.A.C.C.P. (as amended 1969). Further, the record does not reflect that prospective jurors were challenged for failure to be a householder or freeholder.

■■ Appellant alleges in his fourth ground of error that the trial court erred in not allowing him additional peremptory challenges. This contention is without merit. The record reflects that appellant requested ten additional peremptory challenges, and that the request was denied. Thereafter a prospective juror, a Mr. Reeves, was examined. At the conclusion of the examination, the following transpired:

"MR. BENNETT: We'll accept the juror, Your Honor.

"THE COURT: What says the defendant?

"MR. CALDWELL: Your Honor, at this time, we would like to renew our previous request.

"THE COURT: All right. That will be overruled.

"MR. CALDWELL: All right. I accept the juror."

There was no attempt to challenge the prospective juror for cause.

The next venireman called was challenged for cause by appellant, and the challenge was sustained. The next juror was expressly accepted by appellant. The next juror was challenged peremptorily by the State. The following day appellant again requested additional peremptory challenges, and the request was denied. The first venireman called on that day was challenged peremptorily by the State. The next juror was accepted with any objection waived by appellant as follows: "MR. CALDWELL: No objections, Your Honor." Objection to the next juror was likewise waived. The next and final juror was accepted by appellant.

Appellant does not claim that the court erroneously overruled one of his challenges for cause. Also, he does not show that an "objectionable" juror was placed on the jury, or that he tried in any way to challenge any juror after he made his request for additional challenges. No error is shown. Rodriguez v. State, 399 S.W.2d 818 (Tex.Cr.App.1966); Teter v. State, 166 Tex.Cr.R. 489, 316 S.W.2d 756 (1958); Bayless v. State, 166 Tex.Cr.R. 479, 316 S.W.2d 743 (1958).

Appellant contends in his second ground of error that the death penalty constitutes cruel and unusual punishment, and that its imposition in this case is therefore violative of the Eighth and Fourteenth Amendments to the United States Constitution. This Court has held to the contrary on numerous occasions, e. g., Curry v. State,

468 S.W.2d 455 (Tex.Cr.App.1971); Morales v. State, 458 S.W.2d 56 (Tex.Cr.App.1970); David v. State, 453 S.W.2d 172 (Tex.Cr.App.1970); Grant v. State, 449 S.W.2d 480 (Tex.Cr.App.1969). Further, an examination of the Constitution of the United States reveals through the amendments to the same, that the death penalty for crime is recognized. The Fifth Amendment to this Constitution says "No person shall be held to answer for a capital, or otherwise infamous crime . . .." Black's Law Dictionary defines a capital crime "affecting or relating to the head or life of a person; entailing the ultimate penalty. Thus, a capital crime is one punishable with death." The Fourteenth Amendment to the Constitution of the United States says as follows: Section 1. " . . . . nor shall any state deprive any person of life, liberty or property without due process of law . . .." Thus, it is evident that the Constitution foresees the death penalty as punishment for crime both in an amendment that was adopted at the same time as the Eighth Amendment and in the Fourteenth Amendment on which appellant herein relies. Further, the Constitution of the State of Texas, Vernon's Ann.St. in Article I, Section 19, provides: "No citizen of this State shall be deprived of life, liberty . . . except by due course of the law of the land." This Court holds to the opinion that it has enunciated many times before that under the Constitution of the United States or the State of Texas, that the death penalty is not cruel and unusual punishment.

■ Appellant's third ground of error states that the trial court erred in denying his motion for continuance which was filed on the day prior to trial. He alleged in his motion that his attorney of choice had not had sufficient time to prepare for trial, and that he desired to have a psychiatric examination prior to trial. Appellant offered no evidence in support of his motion. The record reflects that appellant had been represented by appointed counsel since Decem-

ber 30, 1969 (trial commenced on March 31, 1970).

A motion for continuance on the ground that counsel has had insufficient time to prepare for trial is addressed to the discretion of the trial court and the failure to grant such a motion is not error absent a showing of abuse of discretion. Gordy v. State, 160 Tex.Cr.R. 201, 268 S.W.2d 126 (1953); Wiley v. State, 159 Tex.Cr.R. 297, 263 S.W.2d 568 (1954); Abrego v. State, 157 Tex.Cr.R. 264, 248 S.W.2d 490 (1952); Jones v. State, 156 Tex.Cr.R. 248, 240 S.W. 2d 771 (1951); Williams v. State, 148 Tex. Cr.R. 427, 187 S.W.2d 667 (1945).

In the case at bar, we find no abuse of discretion. Appellant offered no evidence as to the particulars of his counsel's need for further preparation. Further, by the allegations in the motion he states that his employed counsel had been retained for two weeks prior to the date of the motion. He also had been represented by appointed counsel for three months prior to the motion. No abuse of discretion is shown.

■ Appellant contends in his fifth ground of error that the court erred in admitting hearsay testimony.

Appellant was arrested in a cafe in Houston in the presence of one Beverly Lindsey. Upon searching appellant and Lindsey, the arresting officer found a pistol in Lindsey's purse. At that time she told the officer that appellant had passed the pistol to her when the officer entered the cafe. The officer was permitted to testify over appellant's objection, as to Lindsey's statement. Lindsey was not called as a witness.

Appellant contends that the admission of Lindsey's testimony was error. He contends that such testimony was hearsay, and that its admission deprived him of his right to confront the witness against him.

The right of confrontation is of federal constitutional dimension. Pointer v. Texas, 380 U.S. 400, 85 S.Ct. 1065, 13 L.Ed.2d 923 (1965); Douglas v. Alabama, 380 U.S. 415, 85 S.Ct. 1074, 13 L.Ed.2d 934 (1965). This does not mean, however, that the Sixth Amendment prohibits the admission of extrajudicial statements under recognized exceptions to the hearsay rule. United States v. Kelly, 349 F.2d 720, 770 (2nd Cir. 1965); Kay v. United States, 255 F.2d 476 (4th Cir. 1958); Schepps v. State, 432 S.W.2d 926 (Tex.Cr.App.1968)—Onion, J., on rehearing. Also see, California v. Green, 399 U.S. 149, 90 S.Ct. 1930, 26 L.Ed. 2d 489 (1970); Pointer v. Texas, 380 U.S. 411, 85 S.Ct. 1065, 13 L.Ed.2d 923 (1965). Nor does the Sixth Amendment prohibit a state from changing, modifying, or enlarging the general hearsay rule, California v. Green, supra, so long as there is a reasonable necessity for such change, and so long as the change "is supported by an adequate basis for assurance that the evidence has those qualities of reliability and trustworthiness to other evidence admissible under long established exceptions to the hearsay rule." Kay v. United States, supra, 255 F.2d 480, Schepps v. State, supra.

An important exception to the hearsay rule is the exception for spontaneous utterances or exclamations. This exception allows the admission of an extrajudicial statement by a witness not present in court if: (1) the statement is the product of an occurrence startling enough to produce a state of nervous excitement which would render the utterance spontaneous and unreflecting, (2) the utterance is made before there is time to contrive and misrepresent, that is, the state of excitement produced by the startling event must still dominate the reflective powers of the mind, (3) the utterance must relate to the circumstances of the occurrence preceding it. See V Wigmore on Evidence, p. 1750 (3rd Ed. 1940).

The third requirement of the exception has been somewhat modified in that the exclamation may relate a prior act which was the cause or provocation of the act. Texas Practice, Evidence, McCormick & Ray, § 918, 919.

The commentators, however, have pointed out that the requirement that the exclama-

tion relate to the occurrence or its cause is not necessitated by the general theory underlying the exception, i. e., that this particular type of hearsay is especially reliable and therefore admissible because it is the spontaneous product of an excited state of mind. Since the primary factor which makes such statements reliable is their spontaneous character, the fact that they relate to some occurrence other than the startling event itself, or its cause, should not make them less reliable. See VI Wigmore, § 1750c, § 1754 and Texas Practice, Evidence, McCormick & Ray, § 918.

We share this view. In the instant case, the spontaneous utterance exception to the hearsay rule would be applicable but for the fact that the utterance does not relate to the startling event. The startling occurrence in this case was the arrest (or perhaps the finding of the pistol). Lindsey's statement that she received the pistol from appellant did not describe or state the cause of the startling event (her statement that the pistol was given to her by appellant did not explain the arrest or the finding of the pistol; it explained only her possession). We fail to perceive why this statement would be less reliable than one describing the event.

Also, the fact that the exclamation was made in response to a question would not automatically make it less reliable and inadmissible. That an exclamation is made in response to a question is a factor to be considered along with all the surrounding circumstances, in determining whether the exclamation was spontaneous. Thus, a leading question would be suspect. But if the requisite state of mind is present, then the fact that a question is asked will not preclude the admission of the exclamation as substantive evidence. Moore v. State, 440 S.W.2d 643 (Tex.Cr.App.1969). See Texas Practice, Evidence, McCormick & Ray, § 914 and cases therein cited.

In the case at bar, the arresting officer's question as to where Lindsey "got the gun" was not leading or suggestive of the answers. That such a question should be less reliable than a "pure" spontaneous utterance seems illogical. We hold that the statement was admissible as substantive evidence. Appellant's fifth ground of error is overruled.

■ Appellant's sixth ground of error states that the admission of the pistol was error.

Any error in the admission of the pistol was expressly waived by appellant. The record concerning the admission of the pistol is set forth below:

"MR. BENNETT: We offer State's Exhibit 6, after showing it to counsel, Your Honor.

"MR. CALDWELL: We have no objection, Your Honor.

"THE COURT: All right. State's Exhibit 6 is admitted into evidence."

Appellant's sixth ground of error is overruled. Land v. State, 465 S.W.2d 153 (Tex. Cr.App.1971); Frey v. State, 466 S.W.2d 576 (Tex.Cr.App.1971); Pointer v. State, 467 S.W.2d 426 (Tex.Cr.App.1971).

■ Appellant also contends in his seventh ground of error that "the verdict and sentence of the jury is contrary to law and facts presented in this case." Three witnesses testified that they saw appellant shoot the deceased. Another witness testified that she heard a shot fired and then looked out from her office in the place of business and saw appellant standing with a gun in his hands. In light of this testimony, the evidence was clearly sufficient to support the conviction.

■ Appellant contends in his eighth ground of error that the court erred in not allowing him to offer evidence concerning the sociological, economic, political, and overall conditions of his neighborhood at the punishment phase of the trial.

Article 37.07(3) (a), V.A.C.C.P. (Supp. 1970), provides, in part, "[E]vidence may be offered by the state and the defendant as to the prior criminal record of the

defendant, his general reputation and his character." This Court has held, however, that evidence which is admissible at the punishment stage is not limited to the type of evidence stated in the statute. "Evidence legally admissible to mitigate punishment or evidence that is revelant to the application for probation, if any, is also admissible." Allaben v. State, 418 S.W.2d 517, 519 (Tex.Cr.App.1967).

In the present case, we fail to perceive how the evidence which the defendant sought to offer would be relevant either in terms of the statute or in terms of the test set forth in Allaben, supra. See White v. State, 444 S.W.2d 921 (Tex.Cr.App.1971). The ground of error is overruled.

 Appellant also alleges as his tenth ground of error that the court erred in excluding prospective jurors who stated that they had conscientious scruples against the infliction of the death penalty. He does not point out the particular juror or jurors to whom he refers. However, we have carefully examined the record and we find that his claim is not supported by the record. Disregarding the veniremen who were challenged peremptorily, or were challenged for cause by appellant, the only jurors who were excluded for cause, on the State's challenge, were those who indicated that they would not vote to inflict the death penalty in any case or under any circumstances, no matter what the evidence might reveal, or in one instance, who testified that their conscientious scruples would prevent them from serving as fair and impartial jurors.

The voir dire examination of only four of the sixteen prospective jurors challenged for cause by the State raises any question as to the propriety of the trial court's granting of the State's challenges and upon careful examination, such questions are resolved in favor of the trial court's holding.

The first venireman whose examination might be questionable was Dan E. Self.

The relevant portion of his voir dire examination appears as follows in the record:

"Do you have any conscientious scruples against the assessment of death as a punishment for the crime of murder, in a proper case?

"A Yes. I believe I do, uh-huh. I'm not in favor of the death penalty.

"Q Does that mean that under no circumstances, no matter what the facts were, you could never participate with a jury in bringing in a death verdict in a murder case?

"A No, I don't believe I could.

"Q Okay. And your conscientious opposition to the death penalty, then, would prevent you from sitting as a fair and impartial juror in any case in which the death penalty was involved, is that correct?

"A Yes, it would.

"MR. BENNETT: We would challenge, *on that basis*, Your Honor.

\* \* \* \* \* \*

"Q Mr. Self, let me ask you this: Are you saying that under no circumstances —you can't think of any circumstances or any factual situation in which you could sit on a jury and return a death verdict?

"A *That's correct.* I just don't believe I could.

"THE COURT: All right, sir. You're excused, Mr. Juror." (Emphasis added)

First, a challenge for cause by the State on the ground that a juror's conscientious scruples against the death penalty would prevent him from serving as a fair and impartial juror is permissible. Witherspoon v. Illinois, 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968).[1] See also, Grider

---

1. The Witherspoon opinion stated, "The issue before us is a narrow one. It does not involve the right of the prosecution to challenge for cause those prospective ju-

v. State, 468 S.W.2d 393 (Tex.Cr.App. 1971). Secondly, even if Self's answer is not considered as indicating that his beliefs would prevent him from making an impartial decision, his answer, "That's correct" to appellant's question would indicate that he could not return a verdict of death.

The next venireman whose examination we feel should be examined is Mrs. O. G. Norwood. The relevant portion of her examination is as follows:

"* * * Do you have any conscientious scruples against the assessment of death as a punishment for the crime of murder in a proper case, Ma'am?

"A I don't believe I can return a death. I don't believe in taking a life.

"Q Does that mean you are conscientiously opposed to capital punishment, ma'am?

"A Well, yes, I believe it would be.

"Q So that in all cases, are there any facts or circumstances which would allow you, personally, to participate with a jury and bring in a death verdict, in a murder case?

"A No. I believe—

"Q No matter what the facts were?

"A Uh-huh.

"MR. BENNETT: We challenge.

"THE COURT: Any objection?

"MR. CALDWELL: No objection.

"THE COURT: All right. You are excused, ma'am."

This answer shows that this venireman indicated that she would automatically vote against the death penalty. While her answer, "No. I believe—" and "Uh-huh" certainly is not an example of English textbook clarity, nevertheless, it is clear that she meant that she would not vote to

rors who state that their reservations about capital punishment would prevent them from making an impartial decision

inflict the death penalty, "No matter what the facts were." This conclusion is reinforced by appellant's counsel's express statement "No objection," which is tantamount to admitting the challenge for cause is good. As shown by the other portions of the voir dire examination set forth in this opinion, appellant's counsel often objected to other challenges. Therefore, the inescapable conclusion based on: (1) the answer itself, (2) the express waiver of objection, and (3) the court's sustaining of the challenge (especially in light of the fact that the court often conducted an examination of a prospective venireman sua sponte), is that the venireman's meaning was clear and unambiguous. While express language to the contrary by the venireman would certainly outweigh the factors which lead to this conclusion, in the absence of such language and in the face of what appears to be language sufficient in itself, the factors we have mentioned act as buttresses to the venireman's answer. We find no error in the court's sustaining of the challenge.

Culberson Odom, another venireman, testified in part, as follows:

"Q And you cannot conceive of any set of facts which would allow you, personally, to participate with a jury in bringing in a death verdict?

"A No.

"Q You just couldn't do that?

"A No.

"MR. BENNETT: Thank you, Mr. Odom. We'll challenge for cause.

"THE COURT: Any questions?

* * * * * *

(BY APPELLANT'S COUNSEL)

"Q But I am saying: Do you think that there could be situations, could be circumstances, under which, after hearing

as to the defendant's guilt." 391 U.S. 513, 88 S.Ct. 1772.

all the facts, that you could render or return a verdict of death?

"A Yes. It's possible, yes.

\* \* \* \* \* \*

(BY COUNSEL FOR THE STATE)

"Q Okay. Now, as I understood you first, you said that you were just absolutely opposed to capital punishment, no matter what the facts were in any case. You just couldn't give it. But now, you say that under certain circumstances, you may be able to give it. Now, what is your position, sir?

"A Well, see, you didn't put the question to me exactly like I could understand it, like he, you know, could state it.

"Q Well, I apologize for that, sir.

Are there any facts—can you even think up any case in your mind? Now, I'm not talking about any member of your own family being involved or any multiple murder. I'm talking about any time one person kills one other person. Are there any facts that would justify you in sitting with eleven other people in voting to bring in a death verdict in a murder case?

"A No.

"Q *You never could do that?*

"A *No*. (Emphasis added)

\* \* \* \* \* \*

"Q Well, you think there are none, or you think there are some that you could?

"Q No. As I forestated, I do not believe in capital punishment.

"Q Okay. So you couldn't bring in the death penalty in any case, no matter how horrible the facts of the case were? You couldn't bring in the death penalty if you were on the jury?

"A I don't think so.

"Q Is that right?

"A Uh-huh.

"Q Okay.

\* \* \* \* \* \*

(BY APPELLANT'S COUNSEL)

"Q Mr. Odom, are you stating that you are just so against the death penalty that regardless of the facts of any case, that you could not, with other members of the jury, give a death verdict?

"A No.

"Q You're not saying that, or are you saying that?

"A That's what I'm saying.

"Q You couldn't—

"A No.

"Q —give a death verdict?

"A In other words, I'm fully against it.

"THE COURT: All right. You're excused, then. The challenge is sustained."

Although this venireman apparently had some difficulty in understanding the question, his final answer, in response to questions by appellant's counsel indicates that he would not vote to inflict the death penalty, no matter what would be shown by the evidence.

The most questionable challenge was that of Walter Babbs. He testified in part as follows:

"\* \* \* Do you have any conscientious scruples against the assessment of death as a punishment for the crime of murder, in a proper case, sir?

"A Yes, sir, I do.

"Q I take it, by your answer, then, that there are no facts or circumstances whatever, that would justify you, personally, in rendering a death verdict in a murder case?

"A I don't believe I could.

"Q All right. You're just absolutely opposed to that penalty, on conscientious grounds?

"A Yes, sir.

"Q Thank you, sir.

"MR. BENNETT: We'll challenge for cause.

"MR. CALDWELL: No objection, Your Honor.

"THE COURT: All right. You're excused, Mr. Juror."

For the reasons stated in regard to the examination of Mrs. Norwood, we feel that the meaning of the answer was clear.

While the mere demeanor of the witness cannot contradict his express words so as to give them a meaning in opposition to that which they state, nevertheless, in those instances where the meaning is apparent, but is not stated as clearly as might be desired, elements such as demeanor and tone of voice, etc. are important factors in conveying the precise message intended. As was the case with Mrs. Norwood, appellant's counsel expressly waived objection,[2] and the court did not question the venireman. We do not feel that this Court, having only a "cold" record before us, can unequivocally ignore the actions of those present, in the face of no express language by the venireman which would negate our conclusion, and in the face of language which, at the worst, is only lacking in force.

We cannot believe that Witherspoon v. Illinois, supra, requires certain formal answers and none other. We surely feel that the test of Witherspoon is "not to be applied with the hypertechnical and archaic approach of a 19th century pleading book, but with realism and rationality."[3]

We are aware of a large number of death penalty cases which have recently been reversed in memorandum opinions by the United States Supreme Court.[4] While it is difficult, if not impossible to synthesize a rule from those opinions, we have concluded that the voir dire in the instant case and

**2.** Waiver of objection apparently will not, in itself, vitiate an improper challenge. It is, however, a factor to be considered in cases such as the one at bar, where the exact meaning of a venireman's answer cannot be ascertained with total accuracy from the words of his answer alone. The trial judge being present and having an opportunity to observe, the ruling of the trial court should not be disturbed in the absence of a showing of clear abuse of discretion.

**3.** Ashe v. Swenson, 397 U.S. 436, 444, 90 S.Ct. 1189, 1194, 25 L.Ed.2d 469.

**4.** A partial list includes: Whan v. State, Tex.Cr.App., 438 S.W.2d 918 (1969) reversed as to death penalty 403 U.S. 946, 91 S.Ct. 2281, 29 L.Ed.2d 856 (1971); Harris v. State, Tex.Cr.App., 457 S.W.2d 903 (1970) reversed as to death penalty 403 U.S. 947, 91 S.Ct. 2291, 29 L.Ed.2d 859 (1971); Turner v. State, Tex.Cr. App., 462 S.W.2d 9 (1969) reversed as to death penalty 403 U.S. 947, 91 S.Ct. 2289, 29 L.Ed.2d 858 (1971); Quintana v. State, Tex.Cr.App., 441 S.W.2d 191 (1969) reversed as to death penalty 403 U.S. 947, 91 S.Ct. 2284, 29 L.Ed.2d 857 (1971); Mathis v. State, 283 Ala. 308, 216 So.2d 286 (1968) reversed as to death penalty 403 U.S. 946, 91 S.Ct. 2278, 29 L.Ed.2d 855 (1971); State v. Pruett, 18 Ohio St.2d 167, 248 N.E.2d 605 (1969) reversed as to death penalty 403 U.S. 946, 91 S.Ct. 2284, 29 L.Ed.2d 857 (1971); State v. Wigglesworth, 18 Ohio St.2d 171, 248 N.E.2d 607 (1969) reversed as to death penalty 403 U.S. 947, 91 S.Ct. 2284, 29 L.Ed.2d 857 (1971); Ladetto v. Commonwealth, 356 Mass. 541, 254 N.E.2d 415 (1969) reversed as to death penalty 403 U.S. 947, 91 S.Ct. 2288, 29 L.Ed.2d 858 (1971); People v. Bernette, 45 Ill. 2d 227, 258 N.E.2d 793 (1970) reversed as to death penalty 403 U.S. 947, 91 S.Ct. 2290, 29 L.Ed.2d 858 (1971); State v. Forcella, 52 N.J. 263, 245 A.2d 181 (1968) reversed as to death penalty, Funicello v. New Jersey, 403 U.S. 948, 91 S.Ct. 2278, 29 L.Ed.2d 859 (1971); State v. Mathis, 52 N.J. 238, 245 A.2d 20 (1968), reversed as to death penalty 403 U.S. 946, 91 S.Ct. 2277, 29 L.Ed.2d 855 (1971); State v. Adams, 76 Wash.2d 650, 458 P.2d 558 (1969) reversed as to death penalty 403 U.S. 947, 91 S.Ct. 2273, 29 L.Ed.2d 855 (1971); State v. Aiken, 75 Wash.2d 421, 452 P.2d 232 (1969) reversed as to death penalty 403 U.S. 946, 91 S.Ct. 2283, 29 L.Ed.2d 856 (1971).

the answers of the veniremen are more unequivocal than those which were set forth in the cases which have been reversed.[5] Nor is this a case where the veniremen's answers reflected only their feelings and not their ability to serve as fair and impartial jurors. See Grider v. State, 468 S.W. 2d 393 (Tex.Cr.App.1971).

■ Appellant contends in his eleventh and final ground of error that the trial court erred in admitting into evidence a photograph of the body of deceased which was taken at the scene of the crime after the shooting occurred. The photograph is in black and white. It depicts a man (the deceased) lying on his side on the floor of the place of business where the crime occurred.

The photograph was first identified, but not offered or exhibited to the jury, by the Harris County medical examiner who testified that the man depicted in the photograph was the same man as one Odie C. Wright (the deceased) upon whom he had performed an autopsy.

Later in the course of the trial, the State then had the photograph identified by the witness James McDonald, a salesman who was calling on the store at the time of the killing. He testified that the photograph fairly and accurately depicted that which it purported to show. The State then offered the photograph in evidence, and it was admitted over appellant's objection.

In Martin v. State, 475 S.W.2d 265, 267 (Tex.Cr.App.1972) this Court held:

"A determination as to the admissibility of photographic evidence is made upon the same basis as is a decision on the admissibility of other types of evidence and must rest largely in the discretion of the trial judge. Lanham v. State, Tex.Cr.App., 474 S.W.2d 197 (1971).

"Black and white photographs of the scene of a crime are admissible as an aid to the jury in interpreting and understanding the testimony adduced at the trial. Smith v. State, Tex.Cr.App., 460 S.W.2d 143; David v. State, Tex.Cr.App., 453 S.W. 2d 172; Turner v. State, Tex.Cr.App., 462 S.W.2d 9; Rivera v. State, Tex.Cr.App., 437 S.W.2d 855." * * *

"We hold that if a photograph is competent, material and relevant to the issue on trial, it is not rendered inadmissible merely because it is gruesome[1] or might tend to

1. Texas Employers' Ins. Ass'n v. Crow, 218 S.W.2d 230 (Tex.Civ.App.—Eastland, 1949), affirmed 148 Tex. 113, 221 S.W.2d 235 (1949); Nichols v. State, 267 Ala. 217, 100 So.2d 750 (1958); McKee v. State, 253 Ala. 235, 44 So.2d 781 (1949); State v. Ernst, 150 Me. 449, 114 A.2d 369 (1955); State v. DeZeler, 230 Minn. 39, 41 N.W.2d 313 (1950); State v. Rogers, 233 N.C. 390, 64 S.E.2d 572 (1951); State v. Long, 195 Or. 81, 244 P.2d 1033 (1952); State v. Garver, 190 Or. 291, 225 P.2d 771 (1950). See generally Ann. 73 A.L.R.2d 769 (1960).

arouse the passions of the jury,[2] unless it

2. Oliver v. State, 225 Ark. 809, 286 S.W. 2d 17 (1956); People v. Dunn, 29 Cal.2d 654, 177 P.2d 553 (1947); People v. Jenko, 410 Ill. 478, 102 N.E.2d 783 (1951); State v. Beckwith, 243 Iowa 841, 53 N.W.2d 867 (1952); State v. DeZeler, supra. See generally Ann. 73 A.L.R.2d 769 (1960).

is offered solely to inflame the minds of the jury.[3] If a verbal description of the body

3. Archina v. People, 135 Colo. 8, 307 P.2d 1083 (1957); People v. Jenko, supra; Price v. State, 54 So.2d 667 (Miss.1951); State v. Jensen, 209 Or. 239, 296 P.2d 618 (1955); Commonwealth v. Novak, 395 Pa. 199, 150 A.2d 102 (1959); Commonwealth v. Gibbs, 366 Pa. 182, 76 A.2d 608 (1950); Commonwealth v. Simmons, 361 Pa. 391, 65 A.2d 353 (1949). See generally Ann. 73 A.L.R.2d 769 (1960).

and the scene would be admissible, a photograph depicting the same is admissible.[4]

4. Hinton v. People, 169 Colo. 545, 458 P.2d 611 (1969); State v. DeZeler, 230 Minn. 39, 41 N.W.2d 313 (1950); Pribyl v. State, 165 Neb. 691, 87 N.W.2d 201 (1957); Vaca v. State, 150 Neb. 516, 34 N.W.2d 873 (1948). See generally Ann. 73 A.L.R.2d 769 (1960).

5. In particular see Harris v. State, Tex.Cr.App., 457 S.W.2d 903, reversed as to death penalty.

"In this case a verbal description of the body and the scene are admissible, therefore, it was not error to admit the photographs.

"We recognize there will be cases where the probative value of the photographs is very slight and the inflammatory aspects great; in such cases it would be an abuse of discretion to admit the same."

There being no reversible error, the judgment is affirmed.

### OPINION FOLLOWING COMMUTATION

ROBERTS, Judge.

The mandate not having issued in this cause, the preceding opinion is amended to the following extent: The United States Supreme Court has held the death penalty, as presently imposed, unconstitutional. Furman v. Georgia, 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972); Branch v. Texas, 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972). The Honorable Preston Smith, Governor of the State of Texas, has since commuted appellant's sentence from death to life imprisonment, a procedure upheld by this Court in Whan v. State, 485 S.W.2d 275 (Tex.Cr.App.1972). Therefore, the issue of the constitutionality of the death penalty in this case has been rendered moot. Otherwise, the judgment is affirmed.

ONION, Presiding Judge (dissenting).

This writer has had a number of occasions to write on whether a trial court, in light of Witherspoon v. Illinois, 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968), erred in excluding prospective jurors who expressed conscientious scruples against the infliction of the death penalty in capital cases where the State was seeking the death penalty, i. e., Pittman v. State, 434 S.W.2d 352 (Tex.Cr.App.1968); Ex parte Bryan, 434 S.W.2d 123 (Tex.Cr.App.1968); Harris v. State, 457 S.W.2d 903 (Tex.Cr.App. 1970); Morales v. State, 458 S.W.2d 56 (Tex.Cr.App.1970); Grider v. State, 468 S.W.2d 393 (Tex.Cr.App.1971). Further,

this writer has participated in every other decision of this court since the decision in Witherspoon. Some of the cases have been affirmed and some reversed. There should be little doubt as to the personal opinion of this writer.

Only recently, however, the United States Supreme Court reversed, as to the death penalty, a large number of cases from many states, see Footnote No. 4 of the majority opinion, including five from Texas which had been previously affirmed by this court. Whan v. State, 438 S.W.2d 918 (Tex.Cr. App.1969), rev'd, 403 U.S. 946, 91 S.Ct. 2281, 29 L.Ed.2d 856 (1971); Turner v. State, 462 S.W.2d 9 (Tex.Cr.App.1970), rev'd, 403 U.S. 947, 91 S.Ct. 2289, 29 L.Ed. 2d 858 (1971); Quintana v. State, 441 S.W. 2d 191 (Tex.Cr.App.1969), rev'd, 403 U.S. 947, 91 S.Ct. 2284, 29 L.Ed.2d 857 (1971); Harris v. State, 457 S.W.2d 903 (Tex.Cr. App.1970), rev'd, 403 U.S. 947, 91 S.Ct. 2291, 29 L.Ed.2d 859 (1971); Crain v. State, 394 S.W.2d 165 (Tex.Cr.App.1965), cert. den., 382 U.S. 853, 86 S.Ct. 101, 15 L.Ed.2d 91 (1965), petition for cert. from per curiam denial of habeas corpus granted and judgment rev'd sub nom., Crain v. Beto, 403 U.S. 947, 91 S.Ct. 2286, 29 L.Ed. 2d 857 (1971).

In each of these Texas cases, the death penalty was set aside and the cases were remanded to this court ". . . for further proceedings. Witherspoon v. Illinois, 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968); Boulden v. Holman, 394 U.S. 478, 89 S.Ct. 1138, 22 L.Ed.2d 433 (1969) and Maxwell v. Bishop, 398 U.S. 262, 90 S.Ct. 1578, 26 L.Ed.2d 221 (1970)." Crain was decided prior to the Witherspoon decision, but the other four cases were decided in light of Witherspoon and Turner took note of Boulden v. Holman then recently decided. In Harris, all three of the cases cited by the Supreme Court were considered.

In these memorandum opinions this court was furnished no guidelines. We are only left to speculate just how we misinterpreted or misapplied these decisions if in fact we did. Many questions are left unanswered in this area and others are raised.

Nevertheless, in view of these reversals and the fact that many of the out of state cases which this court has previously cited and relied upon have also been reversed, I feel we are compelled to take another look, in disposing of the instant case, at Boulden v. Holman and Maxwell v. Bishop, even though in those cases the question of a Witherspoon violation was not finally decided.

It is noted that in Maxwell v. Bishop, 398 U.S. 262, 265–266, 90 S.Ct. 1578, 1580, 26 L.Ed.2d 221, 224 (1970), the court wrote:

"As was made clear in Witherspoon, 'a sentence of death cannot be carried out if the jury that imposed or recommended it was chosen by excluding veniremen for cause simply because they voiced general objections to the death penalty or expressed conscientious or religious scruples against its infliction.' 391 U.S., at 522, 88 S.Ct. at 1777. We reaffirmed that doctrine in Boulden v. Holman, 394 U.S. 478, 89 S.Ct. 1138, 22 L.Ed.2d 433. As we there observed, it cannot be supposed that once such people take their oaths as jurors they will be unable 'to follow conscientiously the instructions of a trial judge and to consider fairly the imposition of the death sentence in a particular case.' 394 U.S., at 484, 89 S. Ct. at 1142, 22 L.Ed.2d at 439. 'Unless a venireman states unambiguously that he would automatically vote against the imposition of capital punishment no matter what the trial might reveal, it simply cannot be assumed that that is his position.' Witherspoon v. Illinois, supra, 391 U.S. at 516 n. 9, 88 S.Ct. at 1774 n. 9, 20 L.Ed.2d at 782.

'The most that can be demanded of a venireman in this regard is that he be willing to *consider* all of the penalties provided by state law, and that he not be irrevocably committed, before the trial has [398 U.S. 266, 90 S.Ct. 1581] begun, to vote against the penalty of death regardless of the facts and circumstances that might emerge in the course of the proceedings. If the voir dire testimony in a given case indicates that veniremen were excluded on any broader basis than this, the death sentence cannot be carried out . . . . .' Id., at 522 n. 21, 88 S.Ct. at 1777, n. 21, 20 L.Ed.2d at 785.''

When the foregoing is considered with the examples of voir dire interrogation in both Boulden v. Holman and Maxwell v. Bishop which was held not to meet the Witherspoon test and the same is compared with the voir dire interrogation in the instant case, it is clear to me that the Witherspoon mandate as now interpreted by the United States Supreme Court has not been met. For this reason I would reverse this cause.

Further, I must, in passing, express grave doubts as to the proper disposition of ground of error No. 5 concerning the admission of hearsay testimony. As I understand it, the court is holding that the statement of appellant's companion, made after they both were arrested and searched at a different place and time than the offense alleged, was admissible as part of the res gestae even though in response to a custodial question or interrogation. Presumably appellant, though under arrest, was present and within earshot at the time the statement in response to the question was made.

If this was res gestae, it was res gestae of the arrest only and not even Article 38.22, § 1(b), Vernon's Ann.C.C.P., relating to statements of the accused would appear to authorize such admission.

For the reasons stated, I dissent.

Rehearing denied.

## CONCURRING OPINION OVERRULING APPELLANT'S MOTION FOR REHEARING

MORRISON, Judge.

The majority overruled appellant's motion for rehearing without written opinion.

Upon examination of the record I find that I concur with my brother Roberts on all grounds save the fifth. I would also overrule appellant's contention but would do so because appellant's objection "to

any conversation that was made after the arrest" was not sufficiently specific to call the court's attention to the error he now claims. After appellant made the above objection, the court inquired of counsel as to the basis for his objection and counsel replied "[o]ur objection will go to any conversation, any statement made by Beverly after the arrest." The trial court received no indication from counsel that he was relying upon the right of confrontation as he now contends and was, therefore, not put on notice that the testimony may have been inadmissible hearsay of a third party and in violation of Pointer v. Texas, 380 U.S. 400, 85 S.Ct. 1065, 13 L.Ed.2d 923, as appellant maintains in his brief. Since the specific ground for the objection set forth in the brief was not presented to the trial court for a ruling, no error is presented to this Court. Bell v. State, Tex.Cr.App., 442 S.W.2d 716. See also the cases collated at 12 Tex.Dig., Crim.Law 695(2), requiring specificity in objections.

For the reasons stated, I concur in the overruling of appellant's motion for rehearing.